No. 8700.

WIDOW LOUISE BOULIGNY ET AL. VS. ALBERT C. JANIN ET ALS.

An act in which a party stipulates to make a donation *inter vivos* to a married woman, of a part interest of the donor's claim to lands left by his and the donee's common ancestor, on condition that the donee's husband shall undertake, at his exclusive trouble and expense, the recovery of all the lands claimed under the common ancestor, with the stipulation that the donee will be put in possession as soon as the donor is recognized as the owner of the lands, is really and in law a *contract of mandate* under which the husband agrees to take the steps necessary to the recovery of the lands, accepting as his compensation in case of success, a part interest in said lands to enure to the benefit of his wife.

His wife and her heirs cannot recover from the so called donor, if her husband failed to execute the suspensive condition of his contract. The nullity of such contract, as a consequence of the failure of the suspensive condition, can be urged as a means of defense by the donor or his heirs.

A PPEAL from the Civil District Court for the Parish of Orleans. Monroe, J.

*Albert Voorhies* for Plaintiffs and Appellants.

*I. H. Stauffer, Jr.* for Defendant and Appellee.

The opinion of the Court was delivered by

POCHÉ, J. The following facts have given rise to this litigation:

Plaintiffs' ancestor, Bernard Dauterive, laid claims to several valuable tracts of land in this State, under grants antedating the cession of Louisiana to the United States Government.

In the years 1835 and 1836, several of his grandchildren began to agitate the question of their title to said lands, and with a view to concentrate their efforts in that direction, they entrusted their interests to Louis Bouligny, then the husband of one of their co-heirs, Elizabeth Virginie Dauterive, mother of plaintiffs in this case.

To that end, an act was executed on August 7, 1835, by Antoine Bernard Dauterive, Joseph Valière Dauterive, and Eleanore Dauterive, wife of Auguste Richard, who therein stipulated to make a donation *inter vivos* to Mrs. Bouligny of one undivided third of their respective shares of the lands claimed in this State by their ancestor, Bernard Dauterive, and of lands in Alabama claimed by another ancestor, "*Le Chevalier Montante de Monberault.*" The condition of this donation, as designated in the act, was that Louis Bouligny, the husband of the donee, should undertake the task at his own exclusive trouble, cost and expense, of recovering the title and possession of all the lands claimed by the donors' ancestors, by suit or otherwise, from the Government of the United States, or from any person or persons who might set up adverse claims to said lands.

On June 28, 1836, a similar act touching the same claims was executed by J. B. de Comires Dauterive, to the same Mrs. Bouligny. This act was amended by consent of parties on September 5th, 1837, so as to substitute, as beneficiaries under the act, the two minor daughters of Louis Bouligny and wife.

Similar acts were executed in favor of Mrs. Bouligny by Mrs. Adeline Dauterive in 1835, and by Mrs. Fanélie Dauterive in 1836.

Notwithstanding zealous efforts on his part, Louis Bouligny had not yet succeeded to recover any portion of the Dauterive claim in 1856, when, on his suggestion, all the heirs of Bernard Dauterive joined in a contract with Daniel & Steele, Attorneys-at-Law, to whom they entrusted their claim, on a contingent fee of fifty per cent. of the amount recovered. This contract shows no result, and fell through under the effect of the war between the States. Louis Bouligny died in 1862, before the recovery of any portion of the claim.

In 1869, a contract was made by all the Dauterive heirs with the law firm of Janin & Sons, who took charge of the claim under a stipulated contingent fee of one-third of the amount recovered.

These attorneys succeeded in obtaining a decree in the Supreme Court of the United States, recognizing the claim of the Dauterives to what is called the " Vermilion Prairie Grant," for which they received from the Government land scrip for 135,000 acres of public lands.

Under their contract, they retained for their fee one-third of the scrip and, with the consent of their clients, they also retained ten per cent. of the scrip for the purpose of meeting incidental expenses incurred during the progress of their proceedings.

The defendant, A. C. Janin, one of said attorneys, was about to distribute the residue among his clients when this suit was brought by the plaintiffs, claiming the benefit of the various donations made to their mother, Elizabeth Virginie Dauterive, and to two of her daughters, Louise Bouligny, now widow Darow, and Estelle Bouligny, now the wife of Stanislas Plassan, alleged to result from the several acts hereinabove referred to.

The descendants of the respective donors in said acts are the real defendants in the suit.

Their defense is, substantially, that the alleged donations to Mrs. Bouligny and her daughters were suspensive and conditional, and are null, for the reason that the conditions on which they depended were never executed or complied with.

This appeal is taken by plaintiffs from a judgment sustaining that defense.

We concur with our learned brother of the District Court in his con-

clusion, that while the acts relied upon by plaintiffs are designated as acts of donation, *inter vivos*, they really evidence a contract under which Louis Bouligny undertook to recover the land claim of the Dauterive heirs, under a stipulation that, in the event of success, one-third of the respective shares which would accrue to the so-called donors would become the property of his wife and of his two daughters, Louise and Estelle.

At the date of these acts, the donors did not own the lands·which they claimed, and could not, under any legal possibility, deliver possession of any portion thereof to their donees. And, in point of fact, no portion of the lands mentioned in the acts has ever been recovered by the Dauterives. The judgment in their favor merely recognized the validity of their claim to the "Vermilion Prairie," in lieu and place of which they receive land scrip to be located on Government lands.·

How, under this state of things, could the donees obtain the execution of the stipulation in the act under which they were to be placed in possession of the portion of lands donated to them, as soon as the donors themselves would be recognized as owners of the lands in question? "En prendre possession à compter du jour que le dit donateur *aura été reconnu propriétaire* des parties dans les dites terres?"

It is very clear, from this expression as well as from the whole tenor of the acts, that the so called donors did not purport to be, as it is manifest that they were not, the owners of the lands in question, and hence, they did not intend to then donate any portion of the lands which they might recover. If construed as a donation, the act must of necessity be construed as a donation of future property; and in such a case, it would be stricken with the nullity prescribed in Article 1528 of our Civil Code. This horn of the dilemma would yet more summarily destroy plaintiffs' pretensions.

Testing their position under the mere favorable light of a mandate to their father, entrusting him with the task of recovering the Dauterive claim under a compensation of one-third of all that he may recover, to enure to the benefit of his wife, and a portion, that coming from Comires Dauterive, to his two daughters, we must now ascertain the manner in which Bouligny performed his part of the contract.

From our preceding statement of facts, as taken from the record, it appears that Bouligny had died many years before the Janin contract was entered into, and before the slightest success had crowned his efforts, zealous though they may have been.

The contract with Daniel & Steele, suggested by Bouligny himself, explained in the light of his letters in which he speaks of the "Vermilion Prairie" claim as hopelessly lost, justifies the conclusion that,

as far back as 1856, he had abandoned his mission as the sole agent and manager of the Dauterive claim, and that his subsequent efforts were intended to be in the interest of his wife as an heir, independently of the stipulations in the various acts referred to.

This conclusion is shown as manifestly as the conclusion admitted by all parties, that the Daniel & Steele contract had been tacitly abrogated and absolutely abandoned when the contract with Janin & Sons was entered into in 1869.

Our conclusion being, that the suspensive condition having signally failed of execution, and the contract having been abandoned by all parties, the defendants were authorized in law to set up the nullity of the contract sued upon, as a means of defense. C. P. Art. 20; Police Jury vs. Reeves, 6 N. S. 221.

We note plaintiffs' effort to show that Mrs. Plassan, through her husband, contributed exclusively the assistance needed by Janin & Sons, either in the shape of information or of money. But we note, at the same time, Mr. Plassan's declaration, that he has always looked to his wife's co-heirs for the reimbursement of a sum of two hundred dollars, which he had advanced to the Janins. We must also keep in sight the fact that the mass of the land scrip collected was taxed ten per cent. for the payment of incidental expenses.

Louis Bouligny and his heirs having failed to execute the mandate, which was the essential condition of his wife's rights under the acts invoked by plaintiffs, their claim lacks foundation, either in law or equity, and it was, therefore, properly rejected.

Judgment affirmed.