*995 OPINION.
Murdock:
It appears from the stipulation that in 1913, but subsequent to March 1 of that year, George Shaw executed an instrument purporting to convey about 800 acres of land in fee to Len Langston. It does not appear what consideration Langston gave for this con *996 veyance. Thereafter, Langston claimed title to this property in fee. On January 27, 1919, Langston conveyed one-half of the oil, gas and other minerals in and under and that might be produced from this property to Walker for $15,000. Langston acknowledged receipt of the $15,000. Subsequent to this conveyance to Walker, three children of Shaw sued Langston for an undivided one-half interest in the 800 acres of land to which they claimed title through inheritance of their mother’s interest in community property. Apparently the case was tried and an appeal was taken. At any rate, while the proceeding was pending on appeal it was compromised on May 6, 1920. By the agreement of compromise Langston relinquished any and all claim of title whatsoever to the interest claimed by the plaintiffs in the land, being the undivided one-half interest, and acknowledged the title of the plaintiffs. By the terms of the agreement of compromise Langston was to receive $100,000 in cash and the further sum of $100,000 payable only from the oil produced and saved on the land and accruing to certain royalties after $225,000 was first paid from this oil to the plaintiffs in the suit. On the same day, May 6, 1920, the plaintiffs conveyed to Heinz an undivided 8/128 of all the oil saved from certain parts of the land and also an undivided 9/512 of the oil saved from certain other parts of the land upon consideration of the payment of $100,000 in cash and the payment to the vendor of $225,000 out of the first oil and the payment to Langston of $100,000 out of the next oil. Langston received the cash payment of $100,000 provided for in the compromise agreement and that is not in controversy. The controversy relates only to the second $100,000 which he was to receive only in the event that the property produce sufficient oil to pay the same.
At the end of the day, May 6,1920, Langston was still the owner of the undivided one-half interest in this land which was not in controversy in the suit, subject to the conveyance which he had made to Walker of one-half of the oil, gas and other minerals under the 800-acre tract. On the next day, May 7, 1920, he executed an instrument purporting to give to each of his four children, because of love and affection, an undivided one-fifth interest in an undivided one-half interest in the 800 acres of land. After describing the land this instrument recited:
* * * said one-half interest in said property now being in litigation between Ruby Inez Moore, et al., and * * * the said donor having authorized * * * his attorneys, to settle and compromise said suit * * * this donation shall in no wise affect the procuration and authority of said attorneys to settle and compromise said suit, the donees confirming and ratifying the action taken or which shall be taken by said attorneys pursuant to said authority.
*997 This instrument was apparently executed under a misapprehension of the facts, for the suit had been compromised and settled the previous day and, if the donor had ever been the owner of this particular one-half interest, nevertheless he was thereafter not the owner. On May 7, 1920, the only right which he had in relation to this one-half interest was the right given him under the compromise agreement to receive $100,000 from the oil produced and saved and accruing to the royalties after the payment of $225,000 to the three Shaw children.
The petitioner, in her brief, takes a position somewhat different from that indicated in the assignment of error in the petition. She now concedes that in each year she received one-fifth of the total amount received and distributed by the trustee and one-half of the amount which she received is taxable income to her since it came to her as community property. But she contends that the other one-half of the amount which she received in each year related to' that half of the community property which her husband owned and which she inherited from him at his death. The respondent does not seek to tax the petitioner with any amount which she might have received as an heir of her husband. He contends that one-half of the money coming from the royalties is taxable income to her because she had been a member of the community which had originally acquired the right to receive this money under the agreement of compromise, and she either never parted with this right, or, if she did part with the right, such parting did not relieve her from the payment of income tax upon her share of the money when it became due and was paid.
At the outset we are met with the contention of the respondent that the donation made by Len Langston was void in so far as it attempted to donate the $100,000 which was to be paid out of oil, if such in fact was the result of the donation. He refers to article 1528 of Merrick’s Revised Civil Code of Louisiana, which provides:
A donation inter vivos can comprehend only the present property of the donor. If it comprehend property to come, it shall be null with regard to that.
The respondent insists that since Len Langston could not enforce the payment of the unpaid portion of the compromise settlement until oil sufficient to pay the Shaw children the sum of $225,000 had been captured, and then not until further oil sufficient to pay the $100,000 or at least a part thereof coming to him had been recovered, and since all this depended on the uncertainty of the amount of oil under the land, his right to this $100,000 was future property. He cites Bouligny v. Janin, 35 La. Ann. 748. Counsel for the petitioner has made no reply to this contention. If, as the respondent contends, the donation was an attempt to convey future property, *998 the attempted conveyance would not relieve the petitioner from tax. Parker v. Routzahn, Dist. Ct., N. Dist. Ohio, 10/28/30. Cf. Mitchell v. Bowers, 15 Fed. (2d) 287; Bing v. Bowers, 22 Fed. (2d) 450; affd., 26 Fed. (2d) 1017; Bender v. Pfaff, 282 U. S. 127. But in any event, the Commissioner’s determination need not rest on this contention alone.
While Langston attempted on May 7 to donate undivided interests m that part of the land which was in suit, it is obvious that on that date he did not own the land, a part of which he attempted to donate. On the previous day, May 6, he, through his attorneys, had renounced all title thereto. Further, the Shaw children had on the same day conveyed the oil interests to Heinz, who .in turn had made the cash payment of $100,000, all of which on that date belonged to Langston. Here we are concerned not with the intentions of Langston, whatever they may have been, but with what he actually did. United States v. Phellis, 257 U. S. 152; R. V. Board, 14 B. T. A. 374. It is clear that on May 7 Langston had no land to donate. But it is contended by the petitioner that the act of donation attaches to Lang-ston’s right to receive the amounts payable to him under the compromise. There are words in the act of donation which indicate that this may have been his intention. On the other hand, it is stipulated that the cash payment of $100,000 was paid to Len Langston. If the act of donation carried with it all rights under the compromise agreement, four-fifths of this cash payment was as much the property of the children as was their right to four-fifths of the deferred unpaid amount of $100,000. The matter is clouded with doubt, which should have been removed by the petitioner.
Giving to the act of donation the construction most favorable to the petitioner, it amounted only to an assignment of a right to receive future income. We say this for the following reasons: Since no contention to the contrary is made, we must assume that in the absence of the donation, the whole of the unpaid $100,000 when received would have constituted taxable income to the Langston community, one-half of which would have been taxable to the petitioner and the other half to her husband. Bender v. Pfaff, supra. After the execution of the compromise agreement the Langston community had nothing more to do to earn this income, and a gift of such income does not relieve the donor from income tax thereon. Lucas v. Earl, 281 U. S. 111; Parker v. Routzahn, supra; Alexander S. Browne, 3 B. T. A. 826; Arthur F. Hall, 17 B. T. A. 752; L. Brackett Bishop, 19 B. T. A. 1108; Marion Stone Burt Lansill, 17 B. T. A. 413; Irene MacFadden Winder, Executrix, 17 B. T. A. 303.
While the donation was made by the husband, he made it “ not as the exclusive owner, but because by law he was created the agent of *999 the community.” Warburton v. White, 176 U. S. 484; Arnett v. Read, 220 U. S. 311. Cf. Bender v. Pfaff, supra. Art. 2404 Merrick’s Revised Civil Code of Louisiana. The donation was as much the act of the petitioner as of her husband. Her husband is dead and we are not concerned with his half óf the income, but the petitioner remains taxable on her half irrespective of the act of donation, if in fact such donation transferred to the children a part of this earned but unpaid income. The petitioner should be taxed upon one-half of the payments made in the years before us and further adjustment should be made in compliance with the stipulation.
■ Judgment will be entered under Rule 50.