Eastern Dis.
June, 1832.

DIXON
vs.
DIXON'S EXECU-
TORS,

## DIXON vs. DIXON'S EXECUTORS,

APPEAL FROM THE COURT OF PROBATES OF NEW-ORLEANS.

The repeal of the Spanish law regulating the community of acquests, is not supplied by a statutory provision of this state.

Property found in a succession, is regulated by the law, in force at the time it is opened, no matter how different or contrary thereto, the rule may have been, when the estate was acquired,

The same rule does not apply, in regard to property which enters into the community of acquests and gains,

If by the laws of the country where the marriage takes place, a community of acquests and gains be created by the marriage, a subsequent law declaring there should be no further community between the persons who had entered into this engagement, would be retrospective, and a violation of rights vested under the contract.

It is not the law in force at the time the community is dissolved, but that in vigor at the period it was formed, which regulates the rights of husband and wife to the property acquired during coverture,

The wife can acquire a right to property made, during marriage before that marriage is dissolved, and these rights exist to the same extent, and are as susceptible of being enforced when the community ceases by a repeal of the law, as they are when it terminates by a separation from bed and board.

The repeal of the law does not destroy the right of the wife to the property acquired under it.

This was an action by the wife, against the executors of her deceased husband, to recover one moiety of the estate which the latter acquired during marriage, and of which he died possessed.

The answer put at issue the fact of marriage; but admitting that the parties were married, denied that there existed any community of acquests and gains, as the marriage was solemnized without the state of Louisiana, and the wife never resided therein.

Eastern Dis.
June, 1832.

DIXON
vs.
DIXON'S EXECU-
TORS.

The evidence showed that the parties were married in Pennsylvania, in 1813. That in 1816, the husband removed to Louisiana, where he continued engaged in business until his death, which took place in 1831; the wife, all the time residing in Pensylvania. The court *a qua* gave judgement for the plaintiff, and the defendants appealed.

*Maybin*, for appellants, made the following points:

1. That the law of the *fuero real*, giving the community claimed by the plaintiff, was abrogated by the act of March 25th, 1828. 1 *Miller's Rep.* 397.

2. That the *Louisiana Code, art.* 2370, gives the community only in cases when both husband and wife who are married in another state reside in Louisiana; and as the plaintiff never did reside in this state, her claim is impliedly excluded.

3. That the wife has no right to her share in the community of acquests and gains until the decease of her husband, who, till that period, is the sole owner of the community property; and that, as Dixon died in 1831, and there being no law giving the plaintiff her half of the community except the *fuero real*, which was repealed by the act of 1828, the plaintiff has no claim to the half of the estate made by Dixon during his residence in Louisiana. *C. C.* 2373.

4. The law of domicil applies only to the case where both husband and wife reside in Louisiana, and not to a case like the present, where the wife has not acknowledged the jurisdiction or the laws of the state.

*Preston, contra.*

PORTER, J., delivered the opinion of the court.

DIXON
vs.
DIXON'S EXE-
CUTORS,

This is an action in which the wife claims the one-half of the acquests and gains made during the residence of the husband in Louisiana. The answer puts her quality in issue; and admitting her to be the wife of the deceased, denies the right set up in the petition.

/The facts of the case establish, that the parties married in Philadelphia, in 1813; that shortly after, the husband removed into Louisiana, and continued in this state until his death, which took place in 1831. His wife did not accompany him, but remained in the state of Pennsylvania.

The court below gave judgement in favor of the plaintiff, for the one half of the property acquired in Louisiana, and at the same time decreed that the sum of two thousand dollars should be paid to the heir of the husband; it appearing to the satisfaction of the judge, he had brought that amount with him when he came to New-Orleans. /

In the case of *Cole* vs. *Cole's Executors*, this court decided, that where the husband alone removed into this state after marriage, the property acquired by him was subject to the community of acquests. That decision was based on a statutory provision found in the laws of Spain, and on the principle acted on by the court in the case of *Saul* vs. *Syndics of Saul*, that the law regulating the community of acquests was, in the language of the civilians, a real, not a personal statute.

But in the present instance the laws of Spain were repealed previous to the death of the husband, and the case consequently presents questions which did not nor could not arise in that just alluded to.

The repeal of the Spanish law regulating the community of acquests, is not supplied by any statutory provision of this state.

The first inquiry is, whether there be any statutory provision of this state, which supplies the place of the Spanish law, and in virtue of which the plaintiff can maintain the pretension advanced by her. The 2370th article of the Louisiana Code, which is the only legislation we have on this subject, in our opinion does not support it. It changes the previous regulations. It provides only for the case where

both parties come into the state, and leaves the rights growing out of the removal of one of them here, in silence.

Property found in a succession is regulated by the law in force at the time it is opened, no matter how different or contrary thereto the rule may have been, when the estate was acquired. It is of some importance to ascertain whether the same rule applies in regard to that which enters into the community of acquests and gains. We think it does not. The rights of heirs arise from the death of the ancestor. The rights of husband and wife, in the partnership of gains, grow out of the marriage contract, and do not originate in its dissolution; and it is impossible to distinguish between the interest proceeding from such a contract, and that which springs from any other agreement the law sanctions. If, therefore, by the law of the country where the marriage took place, a community of acquests and gains was declared to be created by the marriage, or, in the language of our code, superinduced of right by the contract, we should think that a subsequent law, declaring there should be no further community between the persons who had entered into this engagement, would be retrospective, and as much a violation of rights vested under the contract, as a statute would be, which would alter the obligations imposed, or impair the rights acquired, under a contract of sale or of lease.

We are aware the principles here recognised do not correspond with the doctrines taught by the highest authorities in the French law, by Dumoulin, Pothier, and Toullier. They hold that the wife has no right whatever, until the marriage is dissolved, or the community otherwise terminates. That she has nothing but a mere hope or expectancy. Their law on this subject, ancient and modern, and the opinions of their most eminent jurists, are collated and examined by Toullier, in twelfth volume of his *Droit Civil Français*. A reference to him will show what difficulties attend this question, and how embarrassing these jurists find the arguments, which an opposite view of it presents. But it is not for us to deny, or even doubt the correctness of their conclusions in relation

EASTERN DIS.
June, 1832.

DIXON
vs.
DIXON'S EXE-
CUTORS.

Property found in a succession is regulated by the law in force at the time it is opened, no matter how different or contrary thereto the rule may have been when the estate was acquired.

The same rule does not apply, in regard to property which enters into the community of acquests and gains.

If by the laws of the country where the marriage takes place a community of acquests and gains be created by the marriage, a subsequent law, declaring there should be no further community between the persons who had entered into this engagement, would be retrospective, and a violation of rights vested under the contract.

EASTERN DIS.
June, 1832.

DIXON
vs.
DIXON'S EXE-
CUTORS.

to the law of France. It is sufficient that it is not the same as ours, and that the difference is marked on this very point. The Napoleon Code does not contain the provision found in the Code of Louisiana, that if the husband alienates, during coverture, the acquests and gains, with the intention of injuring the wife, she may, at his decease, bring an action to set aside the alienation. The laws of Spain seem to have furnished that doctrine to the jurisconsults who prepared our code. And the exercise of such a right, does appear to us utterly opposed to the principle, that the wife has no interest in the property, until the community is dissolved; for if she has not, how can she maintain an action to set aside the alienation? Who ever heard of a suit, the sole basis of which was, that the hopes and expectations of the plaintiff had been disappointed and defeated by the acts of the defendant. But admitting that the wife's title to the property did not vest, until the community was dissolved, still her right to have an equal portion of such property acquired during coverture, as might be found at its dissolution, existed.

It grew out of the marriage; was the law at the time the marriage was entered into, and no subsequent legislation could rightfully take it away. There is an able and learned note of *Paillette on the* 1437th *article of the Napoleon Code*, in which this question is incidentally treated, and in which the writer thus expresses himself: *Du moment ou le marriage est contracté, la communauté convenue expressément, ou tacitement, acquiert une existence, et une forme irrevocable. Les rapports avec les epoux sont à jamais déterminés. Toullier, vol.* 12, *lib. cap. nos. Febrero, p.* 1, *cap.* 1, § 22, *no.* 245.

It is not the law in force at the time the community is dissolved, but that in vigor at the period it was formed, which regulates the rights of husband and wife to the property acquired during coverture. Settling this principle, aids in the investigation of the case, but does not decide it. The main difficulty remains. : Notwithstanding the tacit contract which may be . supposed to exist between parties intermarrying in a country

*Marginal note:* It is not the law in force at the time the community is dissolved, but that in vigor at the period it was formed, which regulates the rights of husband and wife to the property acquired during coverture.

2n. If husband alienates his acquired, co
his widow at the Com: Law Claim down out

EASTERN DIS.
June, 1832.

DIXON
vs.
DIXON'S EXE-
CUTORS.

where the community of acquests and gains exists, that tacit contract is understood to have no greater force than the laws themselves; and, as they are real, and impose no obligation *extra territorium*, the agreement is subject to the same limitation. Hence, where married persons move out of the country where they enter into such an engagement, the same consent is understood to exist, namely, that their future acquisitions shall be regulated by the laws of the country which they may select for their residence.: Indeed, according to the principles of law recognized by this court, in the case of *Saul* vs. *his Creditors*, the statute being real, would control their acquisitions of property after they moved within its jurisdiction, no matter what might be the obligations created by the laws of the country where they contracted. The question then arises, whether a law establishing the partnership of acquests and gains during marriage, being repealed before the marriage is dissolved, can affect the rights of parties moving into the country and acquiring property during the time it was in force. In opposition to any such right it is said, first, that the parties did not contract in relation to this law; they came into the state and submitted to its legislation, and as their rights grew entirely out of it, they must be subject to any modification made in those laws. Second, that the assertion of a right being destroyed by the repeal of the law, begs the question, which is, whether any such right existed. That the wife has no property in the acquests and gains until the marriage is dissolved, and that until that event takes place none in fact can be said to exist. 5 *Martin*, *N. S. 570*

These are, certainly, grave objections, and they have received our most serious attention. In the examination of them, we shall invert the order in which they have been just stated, and inquire, in the first place, whether the wife can acquire a right to property made during marriage, before that marriage is dissolved. We think she may. The objection confounds the power of the husband to defeat this right, with its existence. As the head of the community he may dissipate it, or by bad management he may reduce the acqui-

sitions; but if he does not, the right of the wife to the one-half is a legal right, and may be enforced not alone when the marriage is dissolved, but whenever the community ceases. It is true, the Civil Code in force at the time the husband resided in this state declares, that "the wife has no sort of right in the acquests and gains, until her husband be dead"; but this article cannot be taken alone.    Notwithstanding this positive declaration, the very next number of the same article provides that in case the husband has sold or disposed of the property to injure his wife, she may have her action against his heir, to obtain her share of the value of the effects so alienated.    And by a subsequent provision, it is enacted that in case of a separation from bed and board, she can claim her portion in the partnership of gains.    It is, therefore, clear, she has rights in the acquests before the husband dies; and after as much reflection as we are able to bestow on the subject, we can discover no reason why these rights do not exist to the same extent, and should not be as susceptible of being enforced, when the community ceases by a repeal of the law, as they are when it terminates by a separation from bed and board.    *Civil Code* 336, *art.* 66.    *Id.* 342, *art.* 90.

The repeal
of the law does
not destroy the
the right of the
wife to the pro-
perty acquired
under it.

From this view of the case, it is seen the court does not assent to the proposition that the repeal of the law destroyed the right of the wife to the property acquired under it; and as the husband, after that event took place, continued to administer the common property without any act on his part evincing an intention of changing the rights of the parties, it is unnecessary to inquire whether the repeal of the law under different circumstances, would have terminated the community.

A bill of exceptions was taken to the refusal of the court to give the executors further time to procure testimony; but the affidavit on which the application was made, was so wanting in the requisites of the law, that it is clear the court committed no error in refusing the delay prayed for.

It is, therefore, ordered, adjudged, and decreed, that the judgement of the Court of Probates be affirmed, with costs.