## VOLUME 131

## CASES ARGUED AND DECIDED IN THE SUPREME COURT OF LOUISIANA

AT TERM BEGINNING FIRST MONDAY OF OCTOBER, 1911
AND
AT TERM BEGINNING FIRST MONDAY OF OCTOBER, 1912.

(58 South. 1012.)

No. 18,876.

GASTAUER v. GASTAUER et al.

(May 20, 1912.)

*(Syllabus by the Court.)*

1. WITNESSES (§§ 59, 66*) — COMPETENCY — HUSBAND AND WIFE—PARENT AND CHILD.

The husband and wife are incompetent witnesses in a suit by the wife for separation of property, but there is no law which authorizes the exclusion of the testimony of the children of the marriage, if they be persons of "proper understanding."

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 166, 120; Dec. Dig. §§ 59, 66.*]

2. HUSBAND AND WIFE (§ 262*)—COMMUNITY PROPERTY—PRESUMPTIONS.

The law presumes that property acquired in the name of the wife during the existence of the community was acquired for the community, and the wife, claiming it as her separate property, must rebut that presumption.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 913, 914; Dec. Dig. § 262.*]

3. HUSBAND AND WIFE (§ 272*)—WIFE'S SEPARATE PROPERTY—SUFFICIENCY OF EVIDENCE.

In a suit by a wife for separation of property, it is enough that she show that the hab-its and circumstances of her husband render such separation necessary in order to enable her to preserve for her family the earning that she may derive from her separate industry and talent.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1003–1007; Dec. Dig. § 272.*]

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Sophie Gastauer against George Gastauer and another. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

George J. Untereiner, for appellant. Woodville & Woodville, for appellee Geo. Gastauer. Carroll, Henderson & Carroll, for appellee Union Homestead Ass'n.

### Statement of the Case.

MONROE, J. Plaintiff sues her husband for a separation of property, alleging, in substance, that she owns four lots of ground (which are described) acquired in her name with paraphernal funds, and which she transferred to the Union Homestead Association

to secure a loan of $2,000 in connection with which she subscribed for 20 shares of the stock of the association; that her husband borrowed $1,000, and attempted to secure the same by a mortgage on the same property, and notified said association that he would repay the loan made to petitioner, less the amounts paid on her stock, and would then require a transfer of the property to himself, and that petitioner is informed that said association, unless restrained, will comply with his request, to her great injury; that, in addition to said property, petitioner has a profession, from which she derives an income, and that her husband is habitually intemperate, a spendthrift, who has squandered her money, whilst failing to provide for her or their children, but requiring to be supported; that he is heavily in debt, and that her paraphernalia is in danger. Wherefore she prays that the Homestead Association be enjoined from transferring said property or interfering with her control of said stock, and that she have judgment against her husband of separation of property, and decreeing her to be the owner of said lots and stock. Defendant admits that plaintiff is his wife, and that she has acquired a profession, but he denies the truth of the other allegations of her petition, and prays that the lots referred to be decreed to belong to the community.

The Homestead Association answers, in effect, that it entered into the contract mentioned with both litigants, and has no interest in the matter here litigated save to be protected.

The evidence shows that the litigants were married a number of years ago; that the wife brought nothing in marriage; that the husband was for quite a long time in the business of draying or hauling, and apparently did well; that he afterwards engaged in the retail grocery business, and so continued for about six years, when his place was sold by the sheriff; and that he was then employed as bridge keeper on the new canal. We deduce from the testimony that during the latter period, or probably whilst he was keeping the grocery store, he fell into the habit of drinking rather freely and out of the habit of saving his money, which gave rise to dissension between himself and his wife, and the latter adopted the profession of midwife, and thereafter assumed, in part, if not wholly, the burden of supporting the family, the defendant having abandoned the matrimonial domicile some five months prior to the institution of this suit. In May, 1901, when the premises occupied as a grocery were sold, there was a balance left of $519, which defendant turned over to plaintiff, and in June following the lots here in question were purchased in the name of the plaintiff (together with other lots which have since been disposed of), the price being $1,600, and the terms $600 cash, and the balance, represented by two notes of $500 each, payable in one and two years. Of the $600 cash, $200 were paid by plaintiff's check, and the remaining $400 were paid by defendant's check. In November, 1901, defendant appears to have made an application to the Union Homestead Association for a loan on the property which had been acquired, as above stated, but later, finding, no doubt, that the title stood in the name of the wife, the association rescinded a resolution which it had adopted, approving the application of the husband, and in January, 1902, another application, signed by both wife and husband, was approved, and in connection therewith the wife became a subscriber for 20 shares of the stock of the association. The property was then transferred to the association. A portion of it was sold, and the remaining lots (being those which are here in dispute) were improved, and, as improved, the association is ready to transfer them back to either plaintiff or defendant or both,

as the court may decide, upon payment of the balance admitted to be due. The amount borrowed from the association was $2,000, which amount, on December 13, 1910, as we understand, had been reduced (by applying to the payment thereof the proceeds of the lots sold and other credits, including the installments paid on the stock subscription) to $517.93; and, as the brief of the counsel for the association informs us, has been still farther reduced since that time.

The husband and wife were permitted to testify at length upon the trial of the case, but the testimony of three of the children—persons, apparently, of "proper understanding"—was excluded, that of one of them because she had been in the courtroom during the trial, though the witnesses had been placed under the rule, and that of the other two upon ethical grounds, the learned trial judge being of opinion that the children ought not to be heard to testify against either of their parents.

### Opinion.

[1] Act 190, of 1898, amending and re-enacting article 2281 of the Civil Code, reads as follows:

"The competent witness of any covenant or fact, whatever it may be, in civil matters, is a person of proper understanding. The husband cannot be a witness for or against the wife nor the wife for or against (sic) the husband; but, in any case where the husband or wife may be joined as plaintiffs or defendants and have a separate interest, they shall be competent witnesses for or against their separate interests; and provided, further, that, in all civil suits for damages, instituted by the husband for or on account of personal injuries sustained or suffered by the wife, the wife shall be a competent witness. Provided further, that, in all cases where either spouse has acted as the agent of the other spouse, such spouse, so acting as agent, shall be a competent witness as to all transactions arising from, involved in, or connected with, such agency; but no statement or statements of either party, in suits for separation of property and separation from bed and board or divorce shall be received in evidence."

It is clear that, under the law thus quoted, the testimony of the litigants should have been excluded and that of the children (save perhaps, the one who had been placed under the rule) admitted. Bianchi v. Del Valle, 117 La. 587, 42 South. 148; Nissen v. Farquhar, 121 La. 642, 46 South. 679. And the case would be remanded, in order to afford plaintiff an opportunity to obtain the excluded testimony but that we are satisfied, from the testimony given by the elder son and from other indications disclosed by the record, that the younger children could give no information that would affect the claim set up by plaintiff to the lots and stock, and their testimony, whatever it might be, upon the subject of their father's habits and conduct is not needed for the purposes of plaintiff's demand for a separation of property.

[2] The theory at first propounded by plaintiff was that, in buying the lots, she had paid the cash portion of the price in two installments, the first of $200, and the second of $400, and that the whole amount had been donated to her by her husband; but, defendant having shown conclusively by the production of his canceled check for the amount that it was he who paid the $400 required to complete the cash portion of the price, plaintiff's counsel now argues that the $400 so paid by defendant was in the nature of a temporary advance or loan which plaintiff was to repay. It is not, however, suggested that during the nine years which intervened between the purchase of the property and the institution of this suit anything was said about the repayment of the supposed temporary loan, and it seems to us improbable that plaintiff, having only $200 with which to make a first cash payment of $600, should undertake to buy property the price of which was $1,600, and still more improbable that, if it was the intention to acquire separate property with separate funds nothing to that effect should have been made to appear in the act by which she acquired and which contains merely the usual recital that, aided and authorized by

her husband, she accepts the title, "purchasing for herself, her heirs and assigns."

The theory propounded by defendant is that, finding that there was a balance left to his credit after the payment of the debt for which his grocery store was sold by the sheriff, he turned it over to his wife, as he had before turned money over to her, for general purposes, and for the use and benefit of the family, and that it was not intended as a donation in the sense of article 1746 of the Civil Code. Whether the $200 paid by plaintiff as part of the purchase price of the lots here claimed by her came out of the money so turned over to her is left to conjecture. The law presumes that those lots, though acquired in her name, were acquired for the community, and she has failed to rebut that presumption.

[3] The right of a wife to demand a separation of property is not dependent upon the actual possession by her of separate property, or upon the existence of any claim against her husband for the reimbursement of paraphernal funds. It is enough that she show that the habits and circumstances of her husband render such separation necessary in order to enable her to preserve for her family the earning that she may derive from her separate industry and talent; and that proof plaintiff has made. Davock v. Darcy, 6 Rob. 342; Penn v. Crockett, 7 La. Ann. 343; Wolf & Clark v. Lowry, 10 La. Ann. 272; Webb v. Bell, 24 La. Ann. 75; Chaffe & Sons v. Watts, 37 La. Ann. 324; Brown & Learned v. Smythe, 40 La. Ann. 325, 40 South. 300; Walmsley & Co. in Liq., 107 La. 433, 31 South. 869; Jones v. Jones, 119 La. 687, 44 South. 429.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of plaintiff and against George Gastauer, her husband, decreeing a separation of property between them. It is further decreed that, as between said litigants and the Union Homestead Association and as between said litigants inter sese, all the rights apparently accruing to the plaintiff, Sophie Gastauer, otherwise Mrs. George Gastauer, under the resolution of said association of February 18, 1902, the act of sale of March 3, 1902, and by reason of her holdings of the stock of said association, be decreed to have been vested in the community lately existing between plaintiff and her said husband, and to be now vested in the members of said late community, share and share alike. It is further decreed that the costs of this litigation be paid in equal proportions by the plaintiff and her said husband.