**BEK v. MILLER, Alien Property Custodian, et al.**

(Court of Appeals of the District of Columbia. Submitted October 7, 1925. Decided November 2, 1925.)

No. 4192.

War ⚙⇒12—Wife of German subject, before marriage citizen of United States, held to have recoverable interest in property seized by Alien Property Custodian; "interest, right, or title in money or other property."

Under German Civil Code Relative to Community of Movables, §§ 1438, 1442, et seq., woman who at time of her marriage to a German subject was citizen of United States *held* to have interest in stock of corporation owned by her husband, which constituted an "interest, right, or title in any money or other property," recoverable in suit against Alien Property Custodian, under Trading with the Enemy Act, § 9, par. (b) 3, as amended June 5, 1920 (Comp. St. Ann. Supp. 1923, § 3115½e), nor was such interest derived from her husband.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interest (in Property).]

Appeal from Supreme Court of the District of Columbia.

Action by Emilie Bek against Thomas W. Miller, as Alien Property Custodian, and another. Decree for defendant, and plaintiff appeals. Reversed, and cause remanded.

E. F. Colladay, Edward Clifford, and Benjamin Pettus, all of Washington, D. C., and A. W. Lafferty, of New York City, for appellant.

D. H. Stanley, C. W. McClean, and Peyton Gordon, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. This suit was brought by Emilie Bek to recover an interest in certain property seized and held by the Alien Property Custodian under the Trading with the Enemy Act. The suit was brought under section 9, par. (b) 3, of that act, as amended June 5, 1920 (Comp. St. Ann. Supp. 1923, § 3115½e), permitting a recovery from the Custodian of "any interest, right, or title in any money or other property," at the suit of a married woman who at the time of her marriage was a citizen of the United States, and who prior to April 6, 1917, intermarried with a subject or citizen of Germany, provided that the money or property concerned was not acquired by her, either directly or indirectly, from any subject or citizen of Germany or Austria-Hungary subsequent to January 1, 1917. The lower court decreed against the claimant, and she has appealed.

It appears that on April 18, 1899, the appellant, then a citizen of the United States, was married to Ernst Gideon Bek, a citizen of Baden, Germany; that appellant and her husband then established their home in Baden, and have lived there ever since; that the law of Baden then in force provided for the community ownership by husband and wife of all personal property owned by them at the time of their marriage, as well as that subsequently acquired by them, with certain exceptions not at present material, unless they duly made and registered a contract to the contrary; that these parties did not register such a contract, but remained all the time under the community system; that appellant's husband, assisted by a wedding gift of the appellant in the sum of $500, and by her personal services, conducted the business of a manufacturing jeweler in Baden, and later established a branch of the business in the United States under the name of Ernst Gideon Bek, Inc., the corporate shares of this concern standing in the name of the husband. These shares were seized by the Alien Property Custodian in February, 1918, as enemy-owned property, and were subsequently sold by him for the sum of $61,690.75, which sum remains in his custody. The appellant claims that she was the owner of a half interest in the stock at the time of its seizure, and is entitled to recover the full half of its proceeds.

It is conceded upon the record that the rights of the plaintiff in the community property are defined by the sections of the German Civil Code Relative to a Community of Movables. At the trial below the Wang translation of these sections was admitted in evidence, with permission to the parties to refer to such of them as they might deem material. The following references accordingly appear in the record:

"Sec. 1438. Under the general community of goods the property of the husband and the property of the wife become the common property of both spouses; i. e., common property. Common property includes also any property which he or she acquires during the subsistence of the community of goods.

"Individual objects become common property without the necessity of transfer by juristic act.

"If a right which has been or may be entered in the land register becomes common property, either spouse may require the other to concur in rectifying the land register."

"Sec. 1442. Neither spouse may dispose of his or her share in the common property or in the individual objects belonging thereto, he or she is not entitled to demand partition. A debtor may set off a claim enforceable against the common property only against a claim forming part of the common property.

"Sec. 1443. The common property is subject to the management of the husband. The husband is also entitled to take possession of all things forming part of the common property, or to dispose of such property, or to bring actions relating to such property in his own name. By the husband's acts of management the wife is personally bound neither to third parties nor to her husband.

"Sec. 1444. The husband requires the approval of his wife for a juristic act whereby he binds himself to dispose of the common property as a whole, or to make any disposition affecting such property whereby such an obligation incurred without the consent of the wife is to be fulfilled.

"Sec. 1445. The husband requires the approval of his wife for disposing of any land forming part of the common property, or for incurring an obligation to make such a disposition.

"Sec. 1446. The husband requires the approval of his wife for making a gift out of the common property, or for making any disposition affecting the common property whereby the promise of such a gift given without the consent of the wife is to be fulfilled. The same rule applies to the promise of a gift not affecting the common property. Gifts made in compliance with a moral duty or the rules of social propriety are excepted."

Other applicable provisions of the law are as follows: If the husband disposes of any of the property without the consent of the wife, in the cases where such consent is necessary, she may enforce her rights against third parties without his concurrence (section 1449); if he is prevented by illness or absence from attending to the necessary business of the community she may act (section 1450); the wife may have the community of goods dissolved and her one-half interest placed under her sole control (1) if her husband has undertaken to dispose of property contrary to the provisions of section 1444-6 without her consent, (2) if he has diminished the common property with the intent to injure her, (3) if he has failed to furnish proper maintenance to her and her children, (4) if he seriously endangers the common property through waste of funds, or (5) if the common property is endangered in consequence of liabilities incurred by him (section 1468); in the event of a separation of goods and liquidation of community property, the residue belongs to the spouses in equal shares (section 1476), the distribution being made as in case of a partnership (section 1477); the heirs of a deceased spouse succeed to that spouse's share as his or her heirs (section 1482), and either spouse may dispose by will of his or her interest. It appears, also, that the husband's creditors, but not the wife's can proceed against the community property, and that in case of his bankruptcy, but not her's, the community property becomes part of the bankrupt estate.

We shall not attempt to discuss the refinements of the Baden law in construing these statutes, but we are convinced that they assure to the wife such rights as fall within the description of an "interest, right, or title in any money or other property," as employed by Congress in section 9 of the Trading with the Enemy Act. It is true that such property stands in the name of the husband, and is subject to his management. But in this he acts as the agent of the community, which has some of the incidents of a partnership. His management, moreover, is subject to legal control at the wife's instance. The wife's rights in the community are not derived from the husband, and in event of its dissolution because of his decease or by legal action she retains her interest therein by the same right as before. Her right to make a testamentary disposition of her interest is also significant; and when Congress amended the section on June 5, 1920, and permitted of a recovery from the Custodian of "any interest" in property within his custody, owned by a woman married to a German citizen, but who at the time of her marriage was a citizen of the United States, it is reasonable to believe that the interest of such a woman in community property would come within the legislative intent.

In this country the principle of community ownership by husband and wife has been adopted by statute in Texas, Arizona, Idaho, New Mexico, Nevada, Washington, and California. In Louisiana it has always existed following the French Civil Code. The system as adopted in these states is similar in part to that of Baden, and in all of them, excepting only California, the community rights of the wife are held to be a present vested one-half interest in the community property. It is held that this right is not derived from her husband, but is acquired by her similarly to the acquisition by the husband of his own half interest. See Edwards v. Brown, 68 Tex. 331, 332, 4 S. W. 380, 5 S. W. 87; Kircher v. Murray (C. C.) 54 F. 617, 626; Merrell v. Moore, 47 Tex. Civ. App. 200, 104 S. W. 514; La Tourette v. La Tourette, 15 Ariz. 200, 137 P. 426, Ann. Cas. 1915B, 70; Kohny v. Dunbar, 21 Idaho, 258, 121 P. 544, 39 L. R. A. (N. S.) 1107, Ann. Cas. 1913D, 492; Ewald v. Hufton, 31 Idaho, 373, 173 P. 247; Peterson v. Peterson, 35 Idaho, 470, 207 P. 425; Beals v. Ares, 25 N. M. 459, 185 P. 780; In re Williams' Estate, 40 Nev. 241, 161 P. 741, L. R. A. 1917 C, 602; Adams v. Black, 6 Wash. 528, 33 P. 1074.

This subject has been considered with reference to income tax returns filed by citizens of the above-named states. The question arose whether husband and wife were entitled to file separate tax returns, each reporting one-half of the community income, and also whether the estate tax of the estate of a deceased spouse should include more than one-half of the community property of husband and wife domiciled therein. The At-

.torney General rendered a very exhaustive opinion upon the subject, wherein he said: "While the community estate of husband and wife has not in the strictest sense all the incidents of a joint estate or an estate in the entirety as 'they were known at common law, I am convinced that the community estate is for all practical purposes within the language of subdivision (d) of section 402, there being deductible therefrom, in arriving at the net estate of decedent, the one-half interest of the surviving spouse, which may be shown to have originally belonged to such person, and never to have belonged to the decedent." 32 Op. Attys. Gen. 435.

In the case of Warburton v. White, 176 U. S. 484, 494, 20 S. Ct. 404, 408 (44 L. Ed. 555) the Supreme Court of the United States dealt with a case relating to community ownership as established in the state of Washington, and spoke as follows: "Now, it cannot in reason be denied that the decisions from which we have just quoted held that the purpose of the Legislature of Washington, whether territorial or state, in the creation of community property, was to adopt the features essentially inhering in what is denominated the community system—that is, that property acquired during marriage with community funds became an acquêt of the community and not the sole property of the one in whose name the property was bought, although by the law existing at the time the husband was given the management, control and power of sale of such property. This right being vested in him, not because he was the exclusive owner, but because by law he was created the agent of the community. The proceeds of the property when sold by him becoming an acquêt of the community, subject to the trust which the statute imposed upon the husband, from the very nature of the property relation engendered by the provision for the community."

In Arnett v. Reade, 220 U. S. 311, 31 S. Ct. 425, 55 L. Ed. 477, 36 L. R. A. (N. S.) 1040, the Supreme Court, in a case relating to the doctrine of community ownership said: "It is not necessary to go very deeply into the precise nature of the wife's interest during marriage. * * * However this may be, it is very plain that the wife has a greater interest than the mere possibility of an expectant heir. For it is conceded by the court below and everywhere, we believe, that in one way or another she has a remedy for an alienation made in fraud of her by her husband."

It is argued that, if the appellant's claim be allowed, it will result in reinvesting her husband with a one-half interest in whatever property she may recover from the Custodian, since it would still be community property, with his interest therein unextinguished. It is claimed that Congress could not have intended such a procedure, since it would result in returning property to an alien enemy. This argument, however, is untenable, since the seizure of the entire property, followed by a return of the wife's interest therein under section 9 of the act, would effect a segregation of their interests in the property; and furthermore, when Congress provided for the return of a married woman's interest in property held by the Custodian, it could not have been unmindful of the fact that the claimant's husband might acquire a subsequent or even concurrent interest therein.

We find, therefore, upon the record, that the claimant was entitled to a full one-half interest in the proceeds of the property seized by the Custodian, and that the decree of the lower court overruling her claim was erroneous.

The decree is accordingly reversed, with costs, and the cause is remanded for proceedings in accordance herewith.