**PFAFF v. BENDER, Collector of Internal Revenue.**

**No. 19500.**

District Court, E. D. Louisiana. New Orleans. Division.

Dec. 5, 1929.

Charles E. Dunbar, Jr., and Monte M. Lemann, both of New Orleans, La., for plaintiff.

T. M. Logan Bruns, Asst. U. S. Atty., of New Orleans, La., and W. H. Trigg, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., for defendant.

DAWKINS, District Judge.

This suit is for the recovery of $1,348.50, paid under protest as the result of a deficiency assessment on plaintiff's income return for 1927. Plaintiff and his wife lived under the regime of the matrimonial community established by the Louisiana law, and accordingly made separate returns, each for one-half of the total income of the year in question. They were married in this state, and have continued to reside here at all times. All of their revenues were from community sources. The government refused to accept payment upon the basis claimed, but required the plaintiff to pay the taxes upon the whole as his individual income, with the result that the amount was increased by the sum which he now seeks to recover.

The jury has been waived and the matter submitted upon an agreed statement of facts, which now presents for decision only a question of law; that is, as to whether under the law of Louisiana the plaintiff and his wife were joint owners of the income, and entitled to make returns as such for the taxes levied by the Revenue Act of 1926 (44 Stat. 9). It therefore becomes necessary to review the statutory provisions of the state as well as the interpretation placed thereon by its court of last resort to determine the extent of the interest of the wife in the community property and income. These are to be found in the Louisiana Civil Code, arts. 2399 to 2437, inclusive, which primarily have their origin in the Spanish law. I quote some of the most pertinent provisions as follows:

"Art. 2399. Every marriage contracted in this State, superinduces of right partnership or community of acquets or gains, if there be no stipulation to the contrary."

"Art. 2402. This partnership or community consists of the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, * * * of the reciprocal industry and labor of both husband and wife, and of the estates which they may acquire during the marriage, either by donations made jointly to them both, or by purchase, or in any other similar way, even although the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase. But damages resulting from personal injuries to the wife shall not form part of this community, but shall always be and remain the separate property of the wife and recoverable by herself alone; 'provided where the injuries sustained by the wife result in her death, the right to recover damages shall be as now provided for by existing laws.' (As amended and re-enacted by Act 68 of 1902.)"

"Art. 2404. The husband is the head and master of the partnership or community of gains; he administers its effects, disposes of the revenues which they produce, and may alienate them by an onerous title, without the consent and permission of his wife. He can make no conveyance inter vivos, by a gratuitous title, of the immovables of the community, nor of the whole, or of a quota of the movables, unless it be for the establishment of the children of the marriage.

"Nevertheless he may dispose of the movable effects by a gratuitous and particular title, to the benefit of all persons.

"But if it should be proved that the husband has sold the common property, or otherwise disposed of the same by fraud, to injure his wife, she may have her action against the heirs of her husband, in support of her claim in one-half of the property, on her satisfactorily proving the fraud."

"Art. 2403. In the same manner, the debts contracted during the marriage enter into the partnership or community of gains, and must be acquitted out of the common fund, whilst the debts of both husband and wife, anterior to the marriage, must be acquitted out of their own personal and individual effects."

"Art. 2406. The effects which compose the partnership or community of gains, are divided into two equal portions between the

husband and the wife, or between their heirs, at the dissolution of the marriage; and it is the same with respect to the profits arising from the effects which both husband and wife brought reciprocally in marriage, and which have been administered by the husband, or by husband and wife conjointly, although what has been thus brought in marriage, by either the husband or the wife, be more considerable than what has been brought by the other, or even although one of the two did not bring anything at all."

"Art. 2386. When the paraphernal property is administered by the husband, or by him and the wife indifferently, the fruits of this property, whether natural, civil or the result of labor, belong to the conjugal partnership, if there exists a community of gains."

It is thus seen that, in the absence of a prenuptial agreement that there shall be no community, the law conclusively presumes its existence, and not only does the property acquired through the joint and individual efforts of the spouses, regardless of the name in which it is taken, thereafter fall into the partnership, but also all profits and revenues arising from whatever may be brought into the marriage or may be received by either during its existence, except such as comes to the wife from her paraphernal property separately administered by her. While the relation is referred to as a partnership, it does not possess all of the characteristics of a commercial firm, but has some features resembling that status. So long as there exists no occasion for invoking by the wife of certain remedial provisions for her protection, the husband manages and disposes of the community property and income without having to obtain the consent of his wife, subject to the limitations hereinafter discussed. However, he can "make no conveyance inter vivos by a gratuitous title of the immovables, nor of a whole or a quota of the movables, unless it be for the establishment of the children of the marriage. Nevertheless, he may dispose of the movables by a gratuitous and particular title to the benefit of all persons." However, if he does so in fraud of the wife, she may at his death "have her action" against his heirs for reimbursement of her half thereof.

When the marriage is dissolved, either by death or divorce, the property, consisting both of what has been earned and acquired during its existence and of the profits from their separate estates, save those which arise from the paraphernal property of the wife separately administered by her, is divided into two equal parts, which vests, either in the heirs of the deceased and the survivor, respectively, or the spouses, as the case may be, in absolute ownership. It is an interest of which the wife and her heirs cannot be deprived by the husband. But they are protected from his mismanagement in that, if the community is involved, they may accept the same under the law with what is called "benefit of inventory." This means that there must be an administration of the estate under the probate powers of the court, resulting in a marshaling of the property or assets and payment of the community debts, and a distribution of the residue, if any, one-half to each of the beneficial interests. In this way the wife or her heirs escape personal liability for the debts of the community, in event it proves insolvent. The Supreme Court of Louisiana has construed these provisions of the Code as vesting in the wife during marriage the title to one-half of the community property and not as constituting a mere expectancy. See Phillips v. Phillips, 160 La. 813, 107 So. 584, and authorities therein reviewed and analyzed. It is there pointed out that the interest does not come to the wife solely as a result of the dissolution of the marriage, but exists at all times, subject only to the administration of the husband; that it is not in the nature of an inheritance, and neither she nor her heirs can be deprived thereof by any act of the husband. In Dixon v. Dixon's Executors, 4 La. 191, 23 Am. Dec. 478, the Supreme Court of the state, through Justice Porter, pointed out the difference between the views expressed by the French commentators as to the nature of the wife's interest in community property and the law of Louisiana, and in doing so said:

"But it is not for us to deny, or even doubt the correctness of their conclusions in relation to the law of France. It is sufficient that it is not the same as ours, and that the difference is marked on this very point. The Napoleon Code does not contain the provision found in the Code of Louisiana, that if the husband alienates, during coverture, the acquests and gains, with the intention of injuring the wife, she may, at his decease, bring an action to set aside the alienation. The laws of Spain seem to have furnished that doctrine to the juris-consults who prepared our code. And the exercise of such a right, does appear to us utterly opposed to the principle, that the wife has no interest in the property, until the community is dissolved; for if she has not, how can she maintain an

action to set aside the alienation? Who ever heard of a suit, the sole basis of which was, that the hopes and expectations of the plaintiff had been disappointed and defeated by the acts of the defendant?"

See, also, Theall v. Theall, 7 La. 226, 26 Am. Dec. 501, wherein it was held that the will of the husband conveying "one-half of all (his property) to my wife" transmitted only one-half of his half of the community, and not the other half, for the reason that the wife took the latter in her own right, and hence could not be conveyed by the husband, who did not own it. To the same effect see Ramsey v. Beck, 151 La. 190, 91 So. 674.

The state Supreme Court has also consistently held that the surviving spouse does not have to pay the state inheritance tax upon the half of the community property falling to her at its dissolution. Succession of Marsal, 118 La. 212, 42 So. 778. On the other hand, where the husband or wife wills his or her half of the community to the survivor, the inheritance tax is due as in case of any other legacy. Succession of May, 120 La. 692, 45 So. 551; Succession of Popp, 146 La. 464, 83 So. 765, 26 A. L. R. 1446. The debts incurred during marriage must be paid out of community assets, but those of either spouse contracted before marriage have to be borne by their separate interests. If the latter be discharged with community funds, then, on the dissolution of the community, the one for whose benefit the payment was made must account therefor or be charged with the same in the settlement of the partnership. Childers v. Johnson, 6 La. Ann. 634.

The Supreme Court of the United States, in cases arising from some of the other states having laws establishing matrimonial communities similar to those of Louisiana, has had occasion to consider the nature of the interest of the wife therein, and, while the question here raised was not involved, i. e., the ownership of one-half of the community income, nevertheless it has uniformly held (except as to the state of California where the statutory provisions are materially different) that the interest of the wife is a vested one and not a mere expectancy. See Warburton v. White, 176 U. S. 484, 20 S. Ct. 404, 44 L. Ed. 555; Arnett v. Reade, 220 U. S. 311, 31 S. Ct. 425, 55 L. Ed. 477, 36 L. R. A. (N. S.) 1040. Similar holdings are to be found in the decisions of the federal District and appellate Courts. Bek v. Miller, 56 App. D. C. 36, 8 F.(2d) 797; Bacon v. Hopkins (D. C. Tex.) 27 F.(2d) 140; Rucker v. Blair (C. C. A. Wash.) 32 F.(2d) 222. The interest is of such a nature that, if it were sought to be divested by a statute seeking to abolish the community, the same would probably be unconstitutional as destroying a vested right. Dixon v. Dixon's Executors, 4 La. 188, 23 Am. Dec. 478; Arnett v. Reade, supra.

■ I am of the opinion, therefore, that the contention that the wife has a vested interest in community property and not a mere expectancy is sustained both by the statutory provisions of the state as construed by its Supreme Court, as well as the decisions of the Supreme and other federal courts.

■■ The remaining issue is as to whether or not the character of control exercised by the husband over community income in this state is such as to constitute him the owner thereof for the purposes of federal income taxation while the community remains undissolved. The extent of the husband's control is found in article 2404 of the Code, which declares that he is the "head and master of the partnership or community of gains; he administers its effects, disposes of the revenues which they produce, and may alienate them by an onerous title, without the consent and permission of his wife." Standing alone, this expression would indicate that he could dispose of community property, including revenues, which is the same thing as income, only for value, which value, whether in property or otherwise so acquired, would in turn vest in the community. However, the succeeding paragraphs of this article modify the preceding ones to some extent by declaring specifically that he "can make no conveyance inter vivos by a gratuitous title of the immovables of the community, nor of the whole, or a quota of the movables unless it be for the establishment of the children of the marriage." Of course, a "conveyance inter vivos by gratuitous title" means a donation to take effect while he is yet alive and the community, therefore, still extant, and the article by this language clearly deprives him of the power to the extent indicated of giving away the community real estate except for the establishment of the children of the marriage. It also prevents him from giving in a similar manner "the whole or a quota of the movables" except for the same purpose. The third paragraph then goes a step further, and declares that he "may dispose of the movable effects by a gratuitous and particular title to the benefit of all persons." Movables mentioned in this article mean the same thing as personal property under the common law or

all kinds of property other than real estate. While no case has been cited interpreting these apparently conflicting provisions, it would seem that a reasonable construction would be that, while he can neither dispose of the whole of the movables nor a considerable portion thereof by donation to take effect during his lifetime and the existence of the community, he may nevertheless so dispose of particular objects or things of that class by particular title to whomsoever he may choose. At the same time, all of the powers thus given, regardless of extent, are further circumscribed and limited by the last paragraph, which gives the wife a right of action against his heirs at his death for the recovery of the value of such property when the same has been conveyed to defraud or injure her by fraudulently depriving her of her interest in the community. The last provision, that is, prohibiting the fraudulent disposal by the husband of the immovables, was not found in the French or Napoleonic Code, but was derived from the Spanish law. Dixon v. Dixon's Ex'rs, 4 La. 188, 23 Am. Dec. 478. But the Louisiana law goes still further, and it is not necessary that the community should be dissolved before she can protect herself against such fraud of the husband, but she may do so in an action for separation from bed and board or for a separation of property. Smallwood v. Pratt, 3 Rob. (La.) 132; Gastauer v. Gastauer, 131 La. 1, 58 So. 1012.

The jurisprudence of Louisiana is uniformly to the effect that, not only may the wife sue for dissolution of the community and separation of property where her paraphernal or dotal interests are in jeopardy, but she may do so also for the purpose of safeguarding her future earnings arising from her own industry whenever the husband is guilty of mismanagement or other faults which render the same necessary. Such a right of action is available to her without the necessity of coupling therewith a suit for separation from bed and board, or divorce. When such a judgment of separation of property and dissolution of the community is rendered, the court will also decree a division of the community property then owned by them jointly. The case of Gastauer v. Gastauer, 131 La. page 1, 58 So. 1012, 1014, is directly in point. There the wife sued her husband for a separation of property and dissolution of the community, and sought to have herself declared the owner of certain real property which had been acquired in her name during the community, but which was later conveyed to a homestead association to secure a loan and subscription to certain shares of stock in the company. She also sought to enjoin the homestead company from reconveying it to her husband on the claim that it was her separate property. The lower court gave judgment for the defendant, but, on appeal, this was reversed, and the property was held to belong to the community, which the court dissolved and decreed the property to belong in equal portions to the spouses. I quote a part of the opinion and decree expressing the views of that court and showing the disposition which it made of the matter, including a division of the costs equally between the litigants:

"(3). The right of a wife to demand a separation of property is not dependent upon the actual possession by her of separate property, or upon the existence of any claim against her husband for the reimbursement of paraphernal funds. It is enough that she show that the habits and circumstances of her husband render such separation necessary in order to enable her to preserve for her family the earning that she may derive from her separate industry and talent; and that proof plaintiff has made. Davock v. Darcy, 6 Rob. [La.] 342; Penn v. Crockett, 7 La. Ann. 343; Wolf & Clark v. Lowry, 10 La. Ann. 272; Webb v. Bell, 24 La. Ann. 75; Chaffe & Sons v. Watts, 37 La. Ann. 324; Brown & Learned v. Smythe, 40 La. Ann. 325, 4 So. 300; Walmsley & Co. in Liq., 107 La. 433, 31 So. 869; Jones v. Jones, 119 La. 687, 44 So. 429.

"It is therefore ordered, adjudged, and decreed that the judgment appealed from is annulled, avoided, and reversed, and that there now be judgment in favor of plaintiff and against George Gastauer, her husband, decreeing a separation of property between them. It is further decreed that, as between said litigants and the Union Homestead Association and as between said litigants inter sese, all the rights apparently accruing to the plaintiff, Sophie Gastauer, otherwise Mrs. George Gastauer, under the resolution of said association of February 18, 1902, * * * and by reason of her holdings of the stock of said association, be decreed to have been vested in the community lately existing between plaintiff and her said husband, and to be now vested in the members of said late community, share and share alike. It is further decreed that the costs of this litigation be paid in equal proportions by the plaintiff and her said husband."

Not only has she such a right, but the state Code of Procedure supplements this

with an express provision for a writ of injunction to prevent his disposing of the community property pending such an action. Article 298 (Code Prac.) directs, among other grounds, that the writ "must be granted, and directed against the defendant * * *

"6. When a woman·has sued her husband for a separation of property, or for a separation from bed and board, and fears that he will, during the pendency of the suit, dispose, ·to her prejudice, of the property, either held in the community or on which she has a privilege for her dotal rights."

The judgment of separation of property is effective from the date of filing of the petition. R. C. C. art. 2432. The wife may require an inventory of all the property in possession of the husband, and from the date on which the action is brought "it shall not be lawful for the husband to contract any debt on account of the community, nor to dispose of the immovables belonging to the same, and any alienation by him made after that time shall be null, if it be proved that such alienation was made with the fraudulent view of injuring the rights of the wife." R. C. C. arts. 149, 150. During the pendency of such action, he is not entitled to the revenues of common property, but must account therefor. Dillon v. Dillon, 35 La. Ann. 92; McClelland v. Gasquet, 122· La. 241, 47 So. 540; Hill v. Hill, 115 La. 490, 39 So. 503; Crochet v. Dugas, 126 La. 285, 52 So. 495; Williams v. Goss, 43 La. Ann. 868, 9 So. 750. Irrespective of the grounds of separation or by which of the spouses the community property was produced, on its dissolution he or she is entitled to receive one-half thereof. Brooks v. House, 168 La. 542, 122 So. 844. Any sums spent out of community funds upon the separate property or in payment of debts anterior to the marriage must be accounted for at dissolution and ·charged to the separate estates of the spouses · (R. C. C. art. 2403), and, even if the same were paid out of revenues of the separate property of the husband which falls into the community, he must likewise account therefor. Glenn v. Elam, 3 La. Ann. 611. See, also, Dillon v. Freville, 129 La. 1005, 57 So. 316; Succession of Casey, 130 La. 743, 58 So. 556. Until the amendment of the Code some fifteen years ago, the community interest of a deceased husband or wife descended to their heirs, including collaterals, but since that time, in the absence of descendants or ascendants, the interest is now inherited by the survivor. R. C. C. art. 915; Bossier v. Herwig, 112 La. 539, 36 So. 557.

The relation of the husband to the community and its income is more in the nature of a statutory agency, giving him considerable latitude in its management and the application of its funds, hedged about with legal safeguards permitting the wife to protect her interest and to put an end to the agency upon the happening of the circumstances mentioned in the Code; and compelling him to account therefor to such extent and in such manner as excludes the idea of that ownership which is necessary to support his liability for taxes in the case of the ordinary taxpayer. Warburton v. White, supra. The husband may manage the community as a prudent administrator, and is not responsible for mistakes of judgment, but he cannot · dispose of its effects fraudulently without being accountable therefor. And the wife may put an end to this management whenever her interest is in jeopardy, request a division, and compel him or his heirs to account for his fraud.

The Revenue Act of 1926 (section 210(a), 44 Stat. 21, under which the taxes herein involved were collected, provides for the levy at certain rates "upon the net income of every individual; * * *" and, section 223(b), 26 USCA § 964, declares that the incomes of husband and wife may be made by returns separately or jointly. It would seem, therefore, if the income arising from the community belongs in the proportion of one-half to each, then they are entitled to report the same as individuals. The relation as established by the Louisiana law appears more analogous to that of a partnership for taxing purposes. It is referred to as such in many articles of the Code. R. C. C. arts. 2399, 2403, 2406, 2430. With respect to the return and taxation of an interest in a partnership, section 218(a), 26 USCA § 959, provides:

"Individuals carrying on business in partnership shall be liable for income tax only in their individual capacity. There shall be included in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership for' the taxable year," etc.

If the income (one-half of the whole) in this case was the property of the wife, I think it should have been assessed and the tax paid by her, for it will not be assumed that Congress intended to tax one individual for the income of another. I find nothing in

the revenue law purporting to tax the husband as the head of the community for the whole, regardless of its ownership.

In the case of United States v. Robbins, 269 U. S. 315, 46 S. Ct. 148, 149, 70 L. Ed. 285, the Supreme Court had under consideration the same question involved here, except that it required an interpretation of the community laws of California. It was there pointed out that the law of that state, as interpreted by its Supreme Court, gives to the wife a mere hope or expectancy in the community property prior to the dissolution of the marriage. Roberts v. Wehmeyer, 191 Cal. 601, 218 P. 22. But the court, through Justice Holmes, went further in the Robbins Case than to pitch it upon the proposition that the wife during marriage did not own any of the community property or its income, and took occasion to say that, even if "the wife had an interest in the community income that Congress could tax if so minded, it does not follow that Congress could not tax the husband for the whole. Although restricted in the matter of gifts, etc., he alone has the disposition of the fund. He may spend it substantially as he chooses, and if he wastes it in debauchery the wife has no redress. See Garrozi v. Dastas, 204 U. S. 64, 27 S. Ct. 224, 51 L. Ed. 369." The case thus cited by the Supreme Court arose in Porto Rico, and involved the right of the wife after divorce to compel the husband to account for sums found to have been unnecessarily and extravagantly expended in trips to Europe. Justice White, in deciding that the wife could not exact such an accounting, took occasion to say:

"Besides, when it is considered that the ancient Spanish law, and that law as formulated in the Code of 1889, or in the Porto Rican Code of 1902, *confers no authority upon the wife to obtain a judicial dissolution of the community merely because of the disorder of the husband's affairs, it follows that the power of the husband under the Spanish system is in principle more extensive than it is under the Code Napoleon and the law of the countries which have followed that Code.*" (Italics by the writer of this opinion.)

He then cites a decision of the Supreme Court of Louisiana (Guice v. Lawrence, 2 La. Ann. 226) as pointing out the similarity of the law of community in Louisiana, the Code Napoleon, and the Spanish law. Justice White also adverts to the later provision of the Porto Rican Code, which requires the concurrence of the wife in disposing of the real property of the community, but states that this limitation of power in one direction, as to real property, had the opposite effect contended by the wife as placing a restriction upon the husband's powers as to the whole community property, for the logical reason that, having found it necessary to limit his rights upon real property, it followed that his powers as to the movables and funds, having been excluded from the limitation, were not so restricted. However, there are, under the Louisiana law, both in its codal provisions and as now settled by the decisions of its courts, two decided differences between what the Supreme Court found to be the law of Porto Rico in the Garrozi Case, to wit, with respect to the right of the wife to put an end to the community before dissolution of the marriage, and as to her relief against the fraudulent disposition of the common property. It is as well settled under the Louisiana jurisprudence as anything can be that the wife during marriage may have the community dissolved whenever the husband has been guilty of mismanagement, his affairs are in disorder, he is dissipated, or has engaged in speculation, and this whether she has or had any paraphernal or dotal property, but merely for the protection of future earnings from her own industry. Davock v. Darcy, 6 Rob. (La.) 342 (1844); Jones v. Morgan, 6 La. Ann. 630 (1851); Wolf & Clark v. Lowry, 10 La. Ann. 272 (1855); Mock v. Kennedy, 11 La. Ann. 525, 66 Am. Dec. 203 (1856); Webb v. Bell, 24 La. Ann. 75 (1872); Vickers v. Block, 31 La. Ann. 672 (1879); Chaffe v. Watts, 37 La. Ann. 324 (1885); Brown v. Smythe, 40 La. Ann. 325, 4 So. 300 (1888); Walmsley v. Theus, 107 La. 417, 31 So. 869 (1902); Gastauer v. Gastauer, 131 La. 1, 58 So. 1012 (1912). Then, as heretofore noted, the last paragraph of article 2404 of the Louisiana Civ. Code makes the husband's estate, including his interest in the community, as well as his heirs, liable for the value of her half of the community property which he "has sold * * * or otherwise disposed of * * * by fraud, to injure his wife," in an "action against the heirs." So that, while the Garrozi Case may have been sound authority in support of the decision of United States v. Robbins, it does not follow that it will sustain a similar conclusion when construing the law of Louisiana. For, in the latter case, Justice Holmes found "he (the husband) may spend it (the community income) substantially as he chooses and if he wastes it in debauchery, the wife has no redress." This is not true in Louisiana. Here, if the wife

chooses, she may bring her action at any time when the husband's conduct puts her rights in jeopardy, and have a dissolution of the community and division of its property, including its funds and income. Gastauer v. Gastauer, supra.

When the question of whether, in the states of the Union having community laws, husbands and wives might make separate returns of community income first came up, the Attorney General of the United States, in a well-considered opinion, advised the Treasury Department that in all of them save California this could be done under the revenue laws. That construction was adopted and continued until recently when this case and others were provoked to obtain a ruling of the courts upon the question in states other than California, after the decision in United States v. Robbins. From time to time, efforts have been made in Congress, no doubt at the inspiration of taxpayers in the other states, to have the revenue acts specifically deny the right to make such returns or to permit the same course to be followed in all of the states, but, when the disadvantages of the community system otherwise were weighed against the privilege here claimed, these efforts have failed, and the legislative department has permitted the situation to continue, in so far as any express statutory change is concerned, just as it was, with full knowledge of the views of the Attorney General and the course pursued by the Revenue Department. While this is not conclusive, still it is entitled to great weight as both an administrative and legislative interpretation of the law.

If it should happen in a particular case, for reasons heretofore held sufficient by the courts of Louisiana, that a wife would obtain a dissolution of the community and division of its assets, say at the beginning of a particular year, when the operations of the previous year had produced a substantial income, to require a return alone by the husband of the whole would be to make both pay a tax upon something which they did not own or possess when making the return at the usual period on March 15th. In other words, the fiction of the community partnership would have ended and its property been divided, but nevertheless, if the government's contention is correct, the husband would still have to pay upon the whole as if it were his own when both actually and legally he would not have received it.

My conclusion is that the income of the community belongs jointly to the husband and wife, and that the Revenue Act of 1926 does not require that it be assessed to the husband alone, but each may make a separate return, as was done in this case. It follows that plaintiff should have judgment as prayed for. Proper decree may be presented.