## WARBURTON v. WHITE.

ERROR TO THE SUPREME COURT OF THE STATE OF WASHINGTON.

No. 101.   Argued January 16, 1900. — Decided February 26, 1900.

The statute of Washington Territory of November 14, 1879, providing that one half of community property of husband and wife should be subject to the testamentary disposition of the husband or wife, subject respectively to the community debts, and, in default of such testamentary disposition that the share of the deceased husband or wife should descend to his or her issue, and if there was no such issue should pass to the survivor, does no violation to the Constitution of the United States, when applied to such community property held under the statute of that Territory of November 14, 1873, which provided that property acquired after marriage by either husband or wife, except such as might be acquired by gift, bequest, devise or descent, should be common property, of which the husband should have the entire management and control, with the like absolute power of disposition as of his own separate estate.

THIS case involves the title to a lot of land in the city of Tacoma, in the State of Washington. The pertinent facts presenting the controversy are as follows:

Prior to 1877, Eli G. Bacon and Sophia D. Bacon were husband and wife and citizens and residents of the then Territory of Washington. In the year named, Bacon, the husband, with community funds, that is, with money acquired after his marriage with his wife, Sophia D. Bacon, purchased the real estate in question and took title thereto in his own name, the property being used as the residence of the husband and wife.

At the time of the purchase the laws of the Territory of Washington provided, with reference to community or "common" property, as it was termed in the earlier statute, as follows: By an act approved November 14, 1873, (Laws of 1873, Wash. Ter. p. 450,) the property acquired after marriage by either husband or wife, except such as might be acquired by gift, bequest, devise or descent, was declared to be "common property," and it was further provided that the husband should have the entire management and control of such property,

"with the like absolute power of disposition as of his own separate estate." There was also in force an act approved November 12, 1875, (Laws of 1875, Wash. Ter. p. 53,) providing that upon the death of the husband or wife the whole of the "community" property, subject to the community debts, should go to the survivor.

Subsequently to the purchase of the real estate in question, by an act approved November 14, 1879, (Laws of 1879, Wash. Ter. p. 77,) it was, however, provided that one half of the community property should be subject to the testamentary disposition of the husband or wife, subject respectively to the community debts, and in default of such testamentary disposition that the share of the deceased husband or wife should descend to his or her issue, and if there was no such issue should pass to the survivor. On July 28, 1880, Mrs. Bacon died intestate, leaving surviving her the following children, her only heirs at law, viz.: Matilda B. White and Amelia McDonald, two daughters by a first marriage, and Ellen T. Nelson, a daughter by the marriage with Mr. Bacon.

In August, 1892, twelve years after the death of his wife, Bacon became indebted to Stanton Warburton, plaintiff in error, and the latter recovered a judgment upon such indebtedness in April, 1895. Upon an execution issued on the judgment, a judicial sale was made on March 2, 1896, to Warburton of the interest of Mr. Bacon in the property in controversy; and — after confirmation by the court and the expiration of the time allowed by law for redemption — a deed was duly made to Warburton by the sheriff of Pierce County, Washington, on May 4, 1897. Twenty days thereafter, Warburton instituted an action in the Superior Court of said Pierce County, against the aforementioned children and heirs of Mrs. Bacon, to quiet his title to said lot against alleged adverse claims of said heirs. A joint answer to the complaint was filed on behalf of all the defendants, setting up the facts as to the acquisition of the property by Bacon, the death of Mrs. Bacon intestate while the title to the community property was still in Bacon, and asserting that the defendants had an undivided interest therein as heirs of their mother.

Thereafter, on October 12, 1897, Mrs. Nelson conveyed to the plaintiff whatever interest she had in the property. An amended answer was filed on behalf of the two remaining defendants, reiterating the main allegations of the former answer; setting up that the defendant, Amelia McDonald, for a valuable consideration, had sold and conveyed to her codefendant and sister, Mrs. White, before the commencement of the action, all her interest in said real estate; and it was prayed that the latter might be adjudged the absolute and unqualified owner in fee simple of an undivided one third of the property. A reply was filed to this amended answer, admitting that the lot in question was purchased with community funds, "and that the said property became then and there the community property" of Mr. and Mrs. Bacon, and that Bacon still held title thereto on the decease of his wife.

The cause was heard by the court without a jury upon an agreed statement which embodied the facts above recited, and the additional fact that intermediate the purchase by plaintiff at the sheriff's sale and the purchase by him from Mrs. Nelson, Bacon had died intestate. Each of the parties submitted conclusions of law to be deduced by the court from the facts stated. To a proposition submitted for the defendant, upholding her claim to an undivided one third interest in the property, the plaintiff duly excepted as follows:

"II. Plaintiff excepts to the proposed conclusion of law numbered II on the ground that it is contrary to the findings of fact and the law; on the further ground that under the laws in force at the time the property was purchased and the deed taken, E. G. Bacon was the owner of the property, and was entitled to the succession to all the property in case of the prior death of Mrs. Bacon, and that at the death of Mrs. Bacon, in 1880, Mr. Bacon was the owner in fee simple of all said property; that to give the law of 1879, entitled 'An act regulating and defining the property rights of husband and wife,' approved November 14, 1879, the construction, effect and force given by the court, to wit, that it took away from Mr. Bacon the right of succession to the whole of the property and the right to dispose of it, would be to

give it a retroactive force, contrary to section 31 of said act, and to give it such a retroactive force and take away the right of survivorship in said property, and take away the right to dispose of it would be contrary to article 1, section 10, of the Constitution of the United States, in that it would impair the obligation of the deed or contract by which Mr. Bacon acquired said property, and would deprive said Bacon, his successors and assigns, of the right of survivorship in the property in controversy, which was a vested right under the contract or deed and the laws in force in the Territory at the time the property was acquired. Plaintiff further excepts to said conclusion on the ground that, if said law is given said effect and force above mentioned it would be depriving Mr. Bacon, his successors and assigns, of property without due process of law, and contrary to and in contravention of amendments of the Constitution of the United States, and plaintiff claims the protection of both said provisions of the Constitution of the United States."

The court decided as matter of law that the defendant Mrs. White was, as claimed by her, the owner of an undivided one third interest in the property, and was entitled to a decree quieting her title thereto. From the decree thereupon entered, so far as it sustained the claim of said defendant, the plaintiff appealed to the Supreme Court of the State of Washington. That court affirmed the judgment and denied a petition for rehearing. 18 Wash. St. 511. A writ of error having been allowed, the cause is now here for review.

*Mr. S. Warburton* for plaintiff in error. *Mr. Frederic D. McKenney* was on his brief.

*Mr. Charles S. Fogg* for defendant in error. *Mr. James Hamilton Lewis* was on his brief.

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

The law of the Territory of Washington approved Novem-

ber 14, 1879, provided that in case of intestacy the share of a deceased husband or wife, in community property, should pass to the legal issue of the intestate, and in default of such issue should go to the surviving husband or wife, as the case might be. It is undoubted that if the decision of this cause is to be controlled by this enactment, there is no error in the record.

The error asserted is predicated on the claim that, under the laws of the Territory of Washington existing at the time the property was bought, there was in fact no such thing as community property, since by those laws property bought during marriage with community funds was subject to the disposition of the husband as if it were his separate property, and he was entitled to the whole of the community property in case of the death of his wife before him. The effect of this state of the law in force at the time of the purchase, it is claimed, was in substance to make him the real owner of the property.

The argument is that if the provisions of the law of 1879, previously referred to, conferring on the husband or wife testamentary power to dispose of his or her interest in the community property subject to the community debts, and also providing that in case of intestacy such interest, subject to the debts aforesaid, should descend to the children of the deceased and should only pass to the survivor in default of issue, be given a retroactive effect so as to be operative upon property acquired before the act of 1879, the consequence will be to impair the obligations of the contract of purchase made by the husband, which is at issue in this case, and besides to deprive him of his property without due process of law. This, it is asserted, will be the necessary legal effect, since to cause the statute of 1879 to be operative, upon community property bought by the husband before the enactment of that statute, will be the equivalent of giving to one person the testamentary power to dispose of the property of another person, or, in the absence of a will, amounts to providing that the death of one person intestate shall transmit to the issue of such person property not owned by the deceased intestate, but which belongs to another and distinct living person.

It is manifest that this proposition rests upon the assumption that the act of 1873 which was in force when the property was bought by the husband, with community money, made the property so bought solely and exclusively that of the husband, and hence that the wife had no community interest in it. This follows because if under the act of 1873, the wife had a community interest in property bought with funds of that character, then the transmission of the wife's estate in accordance with the act of 1879, and contrary to the rule of descent provided by the act of 1875, in force at the time the property was purchased, cannot possibly bring about the consequences upon which the argument is based. The result just stated must be the case, since if when the property was acquired the wife had an interest in it, the mere change of the law or rule of inheritance existing when the property was bought would be lawful. Manifestly the proposition that the Territory of Washington had a right to regulate both the power of testamentary disposition of property and the passage thereof in case of intestacy is too elementary to require more than mere statement.

The fallacy which is involved in the contention that under the laws in force at the time the property was bought by the husband, with community money, it became exclusively his, and that the wife had no community interest therein, is plainly demonstrated by a consideration of the import of the laws of Washington existing at the time the purchase was made, as construed both by the Supreme Court of the Territory and of the State of Washington. To these adjudications we shall now refer.

The nature of common or community property, within the Territory of Washington, as such property was constituted by the act of 1873, and the operation of the act of 1879 upon property of that character acquired prior to the passage of the latter act was considered in 1882 in the case of *Holyoke* v. *Jackson*, 3 Wash. Ter. 235. The question for decision in that case was whether, while the act of 1879 was in force, a husband could, without his wife joining, make a valid contract to sell community property acquired prior to 1879. In decid-

ing this question in the negative the court, in the course of the opinion, said (p. 238) :

"By the provisions of the husband and wife acts passed in 1879, and previously, the husband and wife were conceived as constituting together a compound creature of the statute called a community. . . . In it the proprietary interest of husband and wife are equal, and those interests do not seem to be united merely, but unified ; not mixed or blent, but identified. It is *sui generis* — a creature of the statute. By virtue of the statute this husband and wife creature acquires property. That property must be procurable, manageable, convertible and transferable in some way. In somebody must be vested a power in behalf of the community to deal with and dispose of it. To somebody it must go in case of death or divorce. Its exemptions and liabilities as to indebtedness must be defined. All this is regulated by statute. Management and disposition may be vested in either one or both of the members. If in one, then that one is not thereby made the holder of larger proprietary rights than the other, but is clothed, in addition to his or her proprietary rights, with a bare power in trust for the community. This power the statute of 1873 chose to lay upon the husband, while the statute of 1879 thought proper to take it from the husband and lay it upon the husband and wife together. As the husband's 'like absolute power of disposition as of his own separate estate,' bestowed by the ninth section of the act of 1873, was a mere power conferred upon him as a member and head of the community in trust for the community, and not a proprietary right, it was perfectly competent for the legislature of 1879 to take it from him and assign it to himself and his wife conjointly. This was done."

In 1893, the Supreme Court of the State of Washington, in the case of *Hill* v. *Young*, 7 Wash. St. 33, considered the nature of common or community property under the act of the Territory approved December 2, 1869, defining the rights of husband and wife. The provisions of the acts of 1869 and 1873, it may be added, were identical, the act 1869 having been repealed by an act passed in 1871. The suit was for partition

of land which had been acquired by a husband with community funds, while the act of 1869 was in force. The husband still held title to the community property in 1883, when the wife died, leaving a child and her husband surviving. It was contended that the power to dispose of the common property conferred by section 2 of the act of 1869 upon the husband was a vested right which could not be taken away by any subsequent statute. Replying to this contention, the court said (p. 38):

"But it is not necessary to decide this point. The act of 1869 having declared certain property 'common' property, did not make provision for the disposal of such property upon the death of either spouse, as was done by later laws on the same subject; but we think that, without anything further than was contained in that act, the courts of the Territory would have been bound to administer upon such property, after the death of husband or wife, according to the established rules of those States and countries where common or community property laws had existed. The first and cardinal of such rules was that the community was dissolved by the decease of either spouse; next the right of disposal in either spouse was ended; and, third, the property became vested by moieties in the survivor and the children. Therefore, upon the death of Mrs. Hill, in 1883, even if the act of 1869 was the only law applicable to this land, the right of the husband to dispose of the whole estate terminated."

In the subsequent case of *Mabie* v. *Whittaker*, 10 Wash. St. 656, the provisions of the law of 1869 were again considered. Land had been purchased on August 10, 1871, by one Mabie, with community funds, during the existence of the act of 1869. While Mabie held the legal title, the legislature repealed the act of 1869, and on November 29, 1871, an act was approved which, in section 12, provided that the husband should have the management of all the common property, but should not have the right to sell or incumber real estate without the joinder of his wife. By section 22 it was provided that common property should be partnership property, and that the share of the wife should be one half thereof, and should be to

her and her heirs forever. On October 25, 1874, after the death of his wife leaving issue, Mabie executed a deed purporting to convey all of the land to one Hallett. Ejectment was brought by the surviving child to be let into possession of the land as tenant in common, etc. It was contended for the defendants that whatever the nature of the interest of Mrs. Mabie in the land, the right of Mabie under the act of 1869, in force when the land was purchased and title taken by Mabie, to convey the entire title could not be impaired by subsequent legislation. The court, however, said (p. 658):

"But, leaving out of consideration all question as to whether he could only exercise such right while his wife was living, and could not convey the entire title, under the former law, after her death, and cut off her heirs, we think the subsequent act took away his power to do so. It was immaterial whether the record title to the community lands stood in the name of the husband or of the wife, or of both of them, when considered with reference to the power of the legislature to authorize either or both of them to convey. The legislature could as well have provided that the wife could convey, as the husband; and if it had power to say that either could dispose of the community interest of the other, it could say that neither could do so. Changing the manner of the conveyance did not alter the status of ownership. It could not make the interest of either spouse in community lands greater or less. Furthermore, prior to the conveyance to Hallett, the community in question had been dissolved by the death of the wife, and at the time of her death the law of 1871, relating to the descent of community property, was in force. Laws 1871, p. 73, sec. 22; Abb. Real Prop. St. 478, provided that: 'The common property being partnership property, the wife's share shall be one half thereof and shall be hers and her heirs forever; and her share of the common property may be increased so as to be more than one half, by the wife's compliance with the provisions of section five of this act.'"

In the course of the opinion, discussing and overruling a further contention, based upon the common law, that Mabie and wife held the land in question as joint tenants with a right of survivorship, the court said (p. 659):

"The act of 1869 did not fix the status of such property, other than to declare it to be common property, and made no provision for its descent. Nor was there at that time, nor for some time thereafter, any express legislative recognition of estates in joint tenancy.

  *    *    *    *    *

"The statute of 1871 did not undertake to divest any right which had become vested. Mabie, receiving this conveyance under the act of 1869, thereby became the owner of an undivided one half interest in the land, and his wife thereby became the owner of the other half. Her right was as much a vested right as his. Under the weight of authority, the legislature had power to change the law of descent, and could take away the right of survivorship, as to estates in joint tenancy, and make the same applicable to lands already acquired. Cooley Const. Lim. 5th ed. 440; Freem. Coten. sec. 36, and cases cited by each; also *Miller* v. *Dennett,* 6 N. H. 109. Section 22, aforesaid, is substantially a statute of descent. It has the technical and apt words of such a statute, 'hers and her heirs forever,' which indicate the legislative intent. There was also a general statute of descent in force, which could more logically be applied to community estates than could the doctrine of joint tenancy. St. 1862, p. 261; Abb. Real Prop. St. 375–378. Subsequently, another act was passed to regulate the descent of real property. Laws 1875, p. 55. Section 2 provided, 'Upon the death of husband and wife, the whole of the community property, subject to the community debts, shall go to the survivor.' This statute continued in force until November, 1879, when an act was passed (Laws 1879, p. 77), section 13 of which was as follows: 'In case no testamentary disposition shall have been made by the deceased husband or wife of his or her half of the community property, it shall descend equally to the legitimate issue of his, her or their bodies. If there be no issue of said deceased living, or none of their representatives living, then the said community property shall all pass to the survivor subject to the community debts, and to the exclusion of collateral heirs, the family allowance and the charges and expenses of administration.'

In neither of these acts were community lands referred to as being held in joint tenancy, and the only reference of the kind thereto is contained in the act aforesaid, passed in 1885, subsequent to all of them."

Next discussing the proposition that a partnership was not a joint tenancy, the court, after calling attention to the fact that by the act of 1871 provision was made for the descent of the wife's share in community property, thus cutting off the husband's right of succession as survivor, concluded on that branch of the case as follows (p. 662):

"We know of no instance, judicial or otherwise, where such doctrine of joint tenancy has been recognized or applied, in the history of the State and Territory, and none has been called to our attention. We are of the opinion that the universal belief and course of acting has been contrary thereto, and that the right of taking by survivorship has at no time existed, as to community lands, here, except under the statute of 1875, providing for such descent."

The rule announced in the foregoing cases was reiterated in the opinion delivered in the case at bar, it being held that Bacon did not become the sole owner of the property in question by the purchase in 1877, but that it became and continued community property so long as the community existed, and that the descent of such property was subject to regulation at will by the legislature.

Now, it cannot in reason be denied that the decisions from which we have just quoted held that the purpose of the legislature of Washington, whether territorial or state, in the creation of community property, was to adopt the features essentially inhering in what is denominated the community system — that is, that property acquired during marriage with community funds became an acquêt of the community and not the sole property of the one in whose name the property was bought, although by the law existing at the time the husband was given the management, control and power of sale of such property. This right being vested in him, not because he was the exclusive owner, but because by law he was created the agent of the community. The proceeds of the property when

sold by him becoming an acquêt of the community, subject to the trust which the statute imposed upon the husband, from the very nature of the property relation engendered by the provision for the community.

The argument of the plaintiff in error then comes to this: That although the statutes of the Territory of Washington, which were continued in force within the State on the organization of the state government, have been construed by the state court contrary to the view now urged upon this court, nevertheless this court should disregard such judicial construction and treat the statutes as conferring rights which the highest tribunal of the State has held never arose from them. It is claimed that where a contract is asserted to have been impaired by a subsequent statute it is the duty of this court to determine for itself the nature and extent of the contract, where the subsequent legislation has been by the decision of the court held operative upon or enforced against the alleged contract rights. The doctrine is elementary, but the principle which it embodies is subject to a well-settled qualification, which is, that where it is asserted that a contract has been entered into on the faith of the state laws, existing at the time when it was made, the construction of such laws, which was settled at the time of the making of the contract, by the court of last resort of the State, will be adopted and applied by this court in considering the nature of the contract right relied upon. This rule, however, it is argued, is not applicable in this case, because it is said that all the decisions of the Supreme Court of Washington referred to were announced since the contract of purchase by the husband was made, and therefore the interpretation, which these decisions expound, cannot be considered as having entered into and formed a part of the contract, since they were not in existence when the contract was made. From this it is argued that the decisions in question do not, therefore, relieve this court of the duty of interpreting for itself, as a matter of first impression, the laws of the Territory or of the State of Washington which are here involved, and upon the faith of which, it is asserted, the obligations arising from the contract took being.

Whilst abstractly considered the proposition is conceded, it

is not apposite to the controversy here presented. The rule is subject to a limitation, which is, that where state decisions have interpreted state laws governing real property or controlling relations which are essentially of a domestic and state nature; in other words, where the state decisions establish a rule of property, this court when called upon to interpret the state law will, if it is possible to do so, in the discharge of its duty, adopt and follow the settled rule of construction affixed by the state court of last resort to the statutes of the State, and thus conform to the rule of property within the State. It is undoubted that this rule obtains, even although the decisions of the state court, from which the rule of property arises, may have been for the first time announced subsequent to the period when a particular contract was entered into. *Burgess* v. *Seligman*, 107 U. S. 20, 34; *Miller* v. *Ammon*, 145 U. S. 421, 423.

Applying the principle just stated to the case before us, we feel no hesitation in construing the contract of purchase, which is here in question, in accordance with the nature and extent of community property, as settled by the decisions of the Supreme Court of Washington, interpreting the laws which were in existence when the purchase was made. Obviously, the reasoning of the plaintiff in error, upon which the assumption that community property bought during the existence of the act of 1873 was solely the property of the husband, involves not only a contradiction in terms but invokes at the hands of this court, in order to overthrow the rule of property in the State of Washington, an interpretation of the statutes of that State which is not only confusing, but self-destructive. It cannot be doubted, under the text of the act of 1873, the property relations of husband and wife were controlled by what is denominated the community system, and that in consonance therewith the statute referred to treated property acquired during marriage with community money as community or common property. Although this is patent, the argument is that the provision in the statute giving the administration and disposition of the community property to the husband operated to destroy the community system and render it impossible, under the statute, for community or common property

to exist. In other words, the interpretation relied upon asked us to say that because of a provision which simply pointed out how common property should be administered, it resulted that there was no common property to be administered. This would be but to declare that the statute brought about a result which was contrary to its express language, providing for the existence of the community system. It is a misconception of that system to suppose that because power was vested in the husband to dispose of the community acquired during marriage, as if it were his own, therefore by law the community property belonged solely to the husband. The conferring on the husband the legal agency to administer and dispose of the property involved no negation of the community, since the common ownership would attach to the result of the sale of the property. As the property in question had not been sold by the husband, but on the contrary was held by him at the date of the death of the wife, no question is presented on this record of the nature and scope of his authority during the existence of the marriage, and we intimate no opinion on that subject.

We have been cited to a decision of the Supreme Court of California, *Spreckels* v. *Spreckels*, 116 Cal. 339, construing an act somewhat similar to the Washington act of 1873, which it is claimed is in conflict with the views enunciated by the courts of Washington in determining the proper construction of the statute of 1873 and the nature of an estate vested in a husband by virtue of that act. But the case referred to involved only the validity of the exercise by a husband, during the existence of a community, of the power of dominion and control over the community property, and the right of the legislature to modify such authority and control with respect to prior acquired community property. We are, therefore, unable to perceive the pertinency of that decision to the question arising for determination on this record, and we need not, therefore, review or consider it.

There being no error in the judgment of the Supreme Court of the State of Washington, that judgment is

*Affirmed.*