Campbell, Chief Justice, court :
delivered the opinion of the
The plaintiff during all of the time involved in this case resided with his wife in New Orleans, and they were citizens of Louisiana. There was filed for him in his absence an income-tax return for the year 1917 and the tax shown thereon was paid in due course. This return, however, showed a greatly less tax than was actually due. Plaintiff, having learned this fact, directed another employee to make up and fije a tax return for the year 1918. This likewise failed to reflect the proper amount of taxes. Payment was made under this return. Coming back to the United States in 1919, the plaintiff employed an attorney in New Orleans .to get a correction of the returns and secure proper settlement oh account of the taxes due and the penalties that could be imposed under the statutes. As a result of the attorney’s efforts, plaintiff was permitted to file amended returns with *667 the internal-revenue collector of the district in which New Orleans is located. This was in August, 1919. The amended return for 1917, as finally audited, showed a tax of $280,-528.87 instead of $34,502.97 originally returned. The amended return for 1918 showed a tax due of $685,372.18 instead of $76,927.12 in the original return. When these greatly increased amounts had been ascertained by the audit section the question was taken up as to the penalties the plaintiff would be subjected to because of the false returns. It appearing that the original returns had been made in plaintiff’s absence and that he had voluntarily sought to have them corrected the assistant commissioner announced that a proposition to settle the amount of the penalty would be considered. Plaintiff’s attorney proposed and the commissioner accepted the sum of $150,000 in settlement of the penalties. The additional tax for the two years, amounting . to $864,560.96, and the penalty of $150,000 were paid by separate checks, the bills for the increased tax and the penalties being stamped “ paid ” on the same date. The income and excess profits upon which these taxes were .imposed arose, according to the averments of the petition, from a business conducted by the plaintiff in his own name in New Orleans and to a small extent, under another name, in Mobile, consisting of the purchase and sale of bananas. “ This business was originated by the claimant at a time when he had no cap.ital and no capital was used by him in starting the business. The method of carrying it on down to and during the year 1917 was to buy ripe bananas from banana importers on credit and dispose of them without delay to his customers. Payment for the bananas by the claimant was made from receipts from his customers, making the use of capital unnecessary.” It is further averred in the petition that “ claimant’s wife had no separate income for the years 1917 and 1918.”
On or about the 24th day of September, 1921, plaintiff and his wife filed separate amended returns for the years 1917 and 1918 wherein the income above referred to was treated on the community-property basis; that is, that each of them owned one-half of such income. It appears that by Treasury Decision 3071 in September, 1920, and Treasury Decision *668 3138 in March, 1921, the Secretary of the Treasury, following opinions of the Attorney General on the subject, promulgated rules that a husband and wife domiciled in Louisiana were entitled to the community-property rule. The filing of the additional or amended returns by the plaintiff and his wife in September, 1921, was an attempt to secure the benefit of these rulings. The situation thus developed would present a question not easy of solution if it were the controlling one in the case in this court. The tax assessable on the entire income has been paid and the commissioner has denied the application for a refund. No assessment has been made against the wife. We are asked to decide that the husband was only liable to taxation on one-half of the income and should therefore have judgment for substantially one-half of the amount of taxes paid, but also to go further and deduct ■from the amount so found to be due the tax which the wife would have to pay if assessed upon one-half of the income, to the end that her taxes shall be paid, and having made this deduction that he be given judgment, with interest, on the balance. The commissioner has made no assessment agajnst the wife. What, if any, penalties would be assessed on account of her failure to make a proper return in due time in nowise appears.
It is to be observed that the suit in this court for a refund of taxes rests upon section 3220, Revised Statutes, as amended (40 Stat. 1145), which authorizes a refund by the Commissioner of Internal Revenue, subject to regulations by the Secretary of the Treasury, of taxes erroneously or illegally assessed or collected or excessive in amount or in any manner wrongfully collected. See also in this connection section 3226 as amended by the revenue act of 1924, 43 Stat. 343, and see section 252 of the revenue act of 1921, 42 Stat. 22Y, or other acts requiring refunds. This being a law of Congress within the meaning of that phrase in section 145, Judicial Code, the Court of Claims is authorized to award a judgment for the amount of the refund, which, under the facts, the commissioner should have allowed, provided he has rejected, or has failed within a stated period to pass upon, the application for a refund. See Rock Island case, 254 U. S. 141, affirming case 54 C. Cls. 22. Indeed, it *669 was at a comparatively recent date that it was finally determined that the taxpayer in such case could come to the Court of Claims instead of suing the collector. See United States v. Emery, 237 U. S. 28, 31; Hvoslef case, 237 U. S. 1, 10; United States v. Savings Bank, 104 U. S. 728, 734. Whether there could at this time be any assessment by the commissioner against the wife is not the material question. Nor is the sole question, as is urged by plaintiff, whether or not there was a compromise of the taxes. The important question for this court to decide is whether there has been wrongfully collected from the plaintiff taxes which upon seasonable application the commissioner has refused to refund. After the taxes in the greatly increased amounts for the years 1917 and 1918 had been determined and the large penalty had been exacted there were promulgated as above stated two Treasury decisions following two opinions by the Attorney General which recognized the community-property rule existing in several of the States — Louisiana among others. The payment was made two years before the application for a refund was made, but within a few months after the promulgation of the Treasury decision the plaintiff and his wife filed amended but separate returns already mentioned. The commissioner’s reply to the husband’s application was to the effect that “ the compromise effected by the taxpayer for the years 1917 and 1918 ” was a full and final settlement of his liability for those years and that the case could not be reopened by either him or the Government. The contention here is that there was never “ a compromise ” of the taxes but a compromise of the civil and criminal liabilities, and therefore that the commissioner’s reason for his refusal is unfounded. We think it is true that the tax liability upon the basis of the income and excess profits of plaintiff was ascertained without deduction and the full amount of the taxes so determined was paid. But the amount of the taxes and the penalties to be accounted for were parts of one settlement. The liability for both was recognized. The plaintiff initiated this settlement and voluntarily paid the amount found due, suggesting no question as to his liability for the whole tax. It is not claimed that the amount of the taxes based upon the stated amount of income *670 and excess profits was less than was agreed to be paid. In these circumstances we think there was a full settlement binding upon both parties, whether it be called settlement or compromise, unless it is to be held that the Treasury decisions mentioned gave a legal right to the plaintiff to make another and a subsequent return of one-half of the income, and also gave his wife the right to make a separate return of the other half and thereby to open up the settlement voluntarily made two years before.
Upon the question of community property we think it must be conceded that in Louisiana the wife’s half interest in community property is a vested right as distinguished from a mere expectancy. Phillips v. Phillips, 160 La. Ann. 814; Arnett v. Reade, 220 U. S. 311; Warburton v. White, 176 U. S. 484. But when it comes, to earnings such as we find in this case, it is to be noted that the statute of Louisiana provides, art. 2404, that the husband is the head and master of the partnership or community of gains; he administers its effects, disposes of the revenues which they produce, and may alienate them by an onerous title without the consent and permission of his wife. Except for fraud, to her injury, she can not call him to account, and in that case the statute provides for suit against “ the heirs ” of the husband. Given this right of control and disposition without liability to account, is it to be said that when the husband returns the income from hi,s own labor for taxation and pays the tax properly assessable on such income he has done something illegal or wrongful, or that the tax has been in any manner erroneously collected from him? Having the right of disposition of this income, the authority to alienate it or even dissipate it, is it to be said he may not use a part of it to pay taxes due upon the whole? He did make the returnp as if the income were his own; he did pay the correct amount of taxes due according to the returns; he did these things voluntarily and he had a legal right to do them. The case of United States v. Robbins, 269 U. S. 315, is in point. That was a suit by executors to recover income taxes paid by the decedent for the year 1918, one of the years mentioned in the instant case. He had been required by the Treasury Department to return and pay the tax upon the whole in *671 come of certain community property against the effort of himself and his wife to file separate returns, each of one-half. He therefore was required to pay more taxes than he would have paid if the contention of himself and wife had been allowed. The claim was predicated upon the laws of California. The Supreme Court, recognizing the distinction drawn in some of the States having the community-property system between the wife’s interest being vested or a mere expectancy, accepts the view that in California the wife had an “ expectancy.” But the opinion states (p. 327) : “ Even if we are wrong as to the law of California and assume that the wife had an interest in the community income that Congress could tax if so minded, it does not follow that Congress could not tax the husband for the whole,” and concludes (p. 328) : “ The reasons for holding him are at least as strong as those for holding trustees in the cases where they are liable under the law.” The plaintiff asserts, however, that what we have quoted from the Bobbins case was mere dictum. We do not so consider it. The court did not confine it,s decision to the point that in California the wife’s interest was a mere expectancy. It held that regardless of that condition the Government could tax the income in the husband’s hands. In a case decided January 3, 1928, Richmond Screw Anchor Co. v. United States, 275 U. S. 331, the question was raised that a statement in a prior .opinion was not necessary to the decision and could only be regarded a,s obiter dictwm, but Mr. Chief Justice Taft, speaking for the court, said: “It does not make a reason given for a conclusion in a case obiter dictwm-, because it is only one of two reasons for the same conclusion.” See also United States v. Title Insurance & Trust Co., 265 U. S. 472, 486. The power and intent of the revenue acts under which the taxes were collected are in this case just as the power and intent of the act mentioned in the Robbins case were before the court in that case, and that the same conclusion should be reached in both cases seems to be clear. We think that under the taxing acts the income could be taxed against the husband. Especially should this follow when the returns were voluntarily made and the taxe,s as well as the penalties were paid without objection by the one who had *672 control and the right of disposition of the income involved and who is now seeking a return of the taxes paid in the circumstances already stated. There was no taxing statute expressly recognizing the community-property rule, and plaintiff’s claim is based upon Treasury decisions promulgated after the taxes were paid, in turn based upon two opinions of the Attorney General, both of which have since been withdrawn. We do not think that section 1212, revenue act of 1926, 44 Stat. 130, determines the result in this case, though we incline to the view that the second sentence in that section would bar recovery by a husband who had elected to return the income as hifs own. Our conclusion is that the petition should be dismissed. And it is so ordered.
Moss, Judge; Graham, Judge; and Booth, Judge, concur.