[No. 3221. Oct. 1, 1929.]

[Rehearing Denied Aug. 26, 1930.]

GIRARD et al. v. GIRARD et al.

[291 Pac. 287.]

Rodey & Rodey, of Albuquerque, for appellants.

Marron & Wood, of Albuquerque, for appellees.

OPINION OF THE COURT

WATSON, J.

This is a suit for the partition of certain lands, which, according to plaintiffs' theory, were the community property of Joseph F. Girard and Mary E. Girard, husband and wife. They were married prior to 1887, and the latter died in 1904. Plaintiffs claim a three-eighths interest in the property as her heirs. Joseph F. Girard died in 1921. Litigation involving his estate has been disposed of in this court. Girard v. Girard, 29 N. M. 189, 221 P. 801, 35 A. L. R. 1493. We will not repeat the facts there set forth. The present defendants are Margaret Morrison Girard, mentioned in the former decision, and persons holding under Joseph F. Girard. Pursuant to the mandate of this court in the former case, a decree was entered awarding the entire estate of Joseph F. Girard to Margaret Morrison Girard. Thereafter the present suit was commenced.

The district court, holding the property in question to have been community estate, awarded three-eighths of it to the plaintiffs as the heirs of Mary E. Girard. Defendants have appealed. There is also a cross-appeal which, in view of the disposition of the appeal, need not be noticed.

Appellants present numerous points, only one of which it will be necessary to consider. The fundamental question is whether Mary E. Girard, at the time of her death, was possessed of any inheritable interest in the lands in

question. One parcel of it had been conveyed to Joseph F. Girard in 1887 and the other in 1899.

In 1904, when Mary E. Girard died, chapter 62, Laws 1901, was in force. According to it, the property in question was denominated the "separate estate" of the husband. Section 1. We will assume, favorably to appellees, that he had acquired it by "onerous title." Section 2. Still he possessed in it all the rights he would have had if single except that he could convey or incumber it only if the wife joined in the act, and he could devise only an undivided half of it. Sections 5 and 6. These sections, with section 9, make it plain that his ownership was not affected by the wife's death except as that event freed him from the restrictions above mentioned upon alienation and devising. The judgment cannot rest upon the provisions of this chapter.

Appellees cite Mings v. Hering, 26 N. M. 425, 193 P. 497, as construing this chapter and as holding "that upon the death of the wife three-eighths of the community property descended to the children." It appears on the face of the opinion that this court accepted the contention of the interveners that, as children of the deceased wife, they were "under chapter 62, Laws 1901, * * * owners in fee simple of a three-eighths interest in the land." This court did not, however, construe the chapter. Its construction was not called for. Strangely, counsel did not question the theory put forward as above stated by the interveners, but contended only that "the surviving husband had the power to sell community property for the purpose of paying the debts of the community without taking out letters of administration." Construction is now for the first time necessary.

Appellees contend that under Compiled Laws 1897, §§ 2030 and 2031, and all previous statutes on the subject, the death of the wife resulted in her heirs taking one-half of the community property, and that chapter 62, Laws 1901, "while perhaps a little fragmentary and ambiguous, was intended to emphasize the same thing." This we do not grasp. On the contrary, we are impressed with the completeness and clarity of the chapter, and note that it

expressly repeals Compiled Laws 1897, §§ 2030 and 2031. Section 9.

But one possible theory could be advanced to sustain the judgment, viz. that chapter 62 did not operate upon property previously acquired. Appellees' counsel do not so contend, and we see no reason at this time for so holding. However, we do not decide the question, reserving it for consideration in case such theory should hereafter be deemed worthy of presentation.

The judgment must be reversed and the cause remanded, with a direction to enter judgment for appellants. It is so ordered.

## ON MOTION FOR REHEARING

Appellees contend that our former opinion is based upon a misapprehension of the meaning of Laws 1901, c. 62. We see no occasion, however, to change anything there said further than to remark that the statute is too clearly expressed to admit of construction. We have merely set forth what we consider its plain meaning.

■ Appellees have taken advantage of the suggestion in the last paragraph of the former opinion and now contend that, if the meaning of the act of 1901 be as we have said, the present case must be decided under the statutes theretofore existing. They advance two reasons: First, because to give application to the act of 1901 would be destructive of vested rights; and, second, because of the canon that statutes are to be construed as prospective.

Appellees contend that the controlling provisions are Comp. Laws 1884, §§ 1365, 1410, and 1411, and Comp. Laws 1897, §§ 2030, 2031, which superseded said sections 1410 and 1411, in 1889 (Laws 1889, c. 90, § 21). We do not pause to question that those provisions controlled prior to 1901; but, to avoid future misunderstanding, we here remark that we do not consider the effect of Laws 1887, c. 32, upon the parcel acquired in September of that year.

We are not here confronted with the question whether the territorial Assembly could, within the Constitution, take community property and place it in the absolute

ownership of either spouse. Such was not the purpose or intent of the act of 1901. In section 1 the term "separate estate" was employed, it is true. But that is mere nomenclature. The "separate estate" of the statute is quite different from the "separate estate" of common understanding and usage. The community or acquest property is as clearly distinguishable as it was before. It was no longer kept intact under the management of the husband. It was to be found mingled in the separate estates of the spouses. But if in fact it was acquired by "onerous title," it remained in fact subject to community rights as defined in sections 5, 6, 7, 8, 9, and 30.

The sections mentioned will be searched in vain for any loss of a vested right by either spouse. They relate to the management and disposition of the property during the continuance of the marriage, and to its devolution upon the death of a spouse. Other sections relate to the division of the property upon divorce or separation. Appellees themselves point out that the husband's previous right of disposition was not a vested property right, and that it had to yield to a statute requiring the wife's consent to its exercise. Arnett .v. Reade, 220 U. S. 311, 31 S. Ct. 425, 55 L. Ed. 477, 36 L. R. A. (N. S.) 1040. If so, surely other lesser managerial rights are subject to legislative control. Provision for an equal division of the property upon divorce or separation is not urged as violative of any existing community rights. We think it could not be. The devolution of the property upon the death of a spouse intestate, and the right to dispose of it by will, are clearly within legislative control. Warburton v. White, 176 U. S. 484, 20 S. Ct. 404, 44 L. Ed. 555.

What has been said we think answers also the contention that we have given retroactive effect to the act. We do not, by our decision, validate or invalidate any previous act of either spouse. We merely give the statute effect from the date of its approval. The idea that any retroactive effect has been given must be based upon the conception that property or property rights have been taken from one and given to another. As we have seen, such is not the case. The Legislature merely changed a name. What was formerly acquest property became "separate

estate" of the husband or of the wife "acquired by him or her during marriage by onerous title." Perhaps the Legislature had in mind to make clear where the legal title in each parcel or article of common property should reside, a point long sharply in dispute. If it made a change in the legal title, it was merely nominal, and would not violate the Constitution unless some attribute of ownership amounting to a vested property right was taken from a spouse.

■ On behalf of appellee Charles Girard, it is contended that the direction to enter judgment for appellants is an incorrect disposition of the cause. He points out that $2,000 was adjudged by the trial court in his favor as an unpaid legacy in the will of Joseph F. Girard. This is a severable part of the judgment in which the other appellee has no concern and which has nothing to do with the interest of either as heirs of Mary E. Girard. The point is well taken unless some of appellants' contentions of error should prevail. The question is unusual and requires further statement.

The amended complaint, in addition to demanding partition, called for an accounting of rents and profits. By way of counterclaim, appellant Margaret Morrison Girard set up an indebtedness of Charles Girard upon a note given to Joseph F. Girard, and constituting a part of his estate. She alleged that no part of the note had been paid, but that Charles was entitled to a credit of $2,000 on account of the legacy. The trial court found that Joseph F. Girard had surrendered the note to Charles with intent to cancel it by way of gift. He thereupon rendered judgment for Charles Girard upon the legacy.

Appellants contend that the legacy constituted no part of appellees' cause of action, and could not have been included without misjoinder. Code 1915, § 4105. That may be true. Yet appellant Margaret Morrison Girard is responsible for its presence in the case, and is hardly in a position to complain on this ground. She cannot deny now that it was proper to plead a counterclaim against Charles Girard alone. In connection therewith she admitted indebtedness for the legacy. If she could set up a counterclaim against him alone, he could, by reply, "allege

* * * any new matter not inconsistent with the complaint, constituting a defense to such new matter in the answer. * * *" Code 1915, §§ 4119-4121. He did not set up the legacy in the reply, no doubt because his adversary had admitted it. That omission leaves open the technical objection that his·judgment is not supported by a pleading. But, the matter having been put in issue by his adversary, and having been litigated, we think we should here treat the pleadings as amended to support the judgment. Code 1915, § 4176; Nikolich v. Slovenska Nardona Podporna Jednota, 33 N. M. 64, 260 P. 849.

Appellants point out that, when their counterclaim was filed, that identical cause of action, with the same admission as to the legacy, was stated in a suit pending in the same court between Margaret Morrison Girard and Charles Girard. This does not avail them. Charles Girard, in his reply, pleaded this fact as a bar to the counterclaim, but was defeated. If it was a bar, Margaret Morrison Girard cannot now complain.

On the merits appellants complain of the finding that the note had been surrendered as a gift. The contention is that Charles Girard's testimony was uncorroborated. Code 1915, § 2175. It is corroborated by numerous circumstances. To set them forth would unduly extend this opinion. The finding must be sustained.

So we adhere to the original opinion except in the matter of direction upon remand. As to that matter the motion for rehearing is well taken. The point having been fully presented by counsel on the motion, we shall now dispose of the appeal.

The judgment will be reversed, and the cause remanded, with a direction to enter judgment for appellants upon the cause of action attempted to be set forth in the amended complaint, and to enter judgment in favor of Charles Girard in the sum of $2,000, with interest, and otherwise as in the original judgment provided, as upon his reply as here amended. It is so ordered.

BICKLEY, C. J., and PARKER, J., concur.

CATRON and SIMMS, JJ., did not participate.