CHRISTINE SMITH KENDRICK, LILIAN B. MORGAN, AND KATHARINE S. SMITH HARE, EXECUTRICES OF THE ESTATE OF KATHARINE ATLEE SMITH, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78700. Promulgated October 1, 1936.

*Henry Gross, Esq.*, for the petitioners.
*J. R. Johnston, Esq.*, for the respondent.

#### OPINION.

HILL: In this proceeding petitioners seek review of respondent's action in determining a deficiency in Federal estate tax of $23,280.76. The sole issue is whether certain powers of appointment given to Katharine Atlee Smith, under the wills of her mother and father, were general powers of appointment. Katharine Atlee Smith, hereinafter called decedent, died testate on November 24, 1931, a resident of Haverford, Montgomery County, Pennsylvania.

---

The will of Catharine Smith, decedent's mother, was executed February 25, 1898, and the fifth paragraph thereof provided as follows:

It is my desire that neither my son Walter E. Smith nor any descendants of his shall participate in any way, shape or manner in my estate. In any general words which I may use in my will providing for children or their descendants, I direct that those words shall operate as they would have operated had my son Walter E. Smith died before me, without any descendants living.

After making certain special bequests, Catharine Smith, by the seventh paragraph of her will, directed that the residue of her estate should be divided into as many parts or shares as there were children of hers living at the time of her decease (other than Walter E. Smith) and children then dead represented by living descendants (other than Walter E. Smith). These parts or shares she gave to her husband, Charles Smith, as trustee, with directions to pay over the net income of one share thereof to each of her sons and daughters during his or her lifetime. It was further provided that the corpus of the trust should be disposed of as follows:

Upon the decease of each of said sons or daughters, to pay over, assign and convey his or her share to such person or to such persons upon such uses and trusts as he or she by any last will shall direct  *  *  *

The will of Charles Smith, decedent's father, was executed May 31, 1905, and the fourth paragraph thereof provided as follows:

By my will and possibly by codicils thereto I have directed and may direct, distribution to be made amongst my descendants. Wherever any principall or income of my estate is to be distributed under any provisions in favor of descendants I direct that it shall be taken as though my son Walter E. Smith had never been born. Under no provision or direction and in no contingency and under no circumstances shall any person take any portion of my estate as his descendant. All provisions in favor of my descendants shall be taken as though incorporated therein was a direction excluding any possibility of any descendants of my son Walter under any conceivable circumstances receiving any distribution or property.

By the thirteenth paragraph of his will, Charles Smith directed that the residue of his estate should be divided into as many parts or shares as at the time of his decease there should be children of his then living and children then dead represented by descendants then living, and further provided:

This provision is of course subject to what I have said with regard to the exclusion of any claim of any descendants, if such claim be made of descendants of my son Walter. Whilst I do not believe any such descendants exist, I wish to exclude under any and all circumstances the possibility of a claim on behalf of such descendants or alleged descendants being made.

By the same paragraph of his will, Charles Smith gave to his three sons, Edward, Charles, and Horace, their respective shares absolutely. To each of his three daughters was given absolutely

$50,000 in cash out of her share, and the balance of each daughter's share was given to a trustee with directions to pay the net income to the daughter for life, the corpus of each daughter's share to be disposed of as follows:

In trust upon the decease of my said daughter to pay over the principal of her share to such persons and for such uses as she by her last will and testament or writing in the nature thereof shall direct.

The decedent, Katharine Atlee Smith, exercised by her will such powers of appointment as she had under the wills of said Charles Smith and Catharine Smith.

The pertinent provisions of the applicable statute are quoted in the margin.[1]

The petitioners contend that the powers of appointment given to and exercised by decedent under the wills of her parents were special powers, because she could not exercise them in favor either of her brother Walter or his descendants, and assign as error the action of respondent in including in the gross estate the value of the property passing thereunder. Respondent contends that the powers in question were general powers of appointment, and that under the quoted statute the value of the property passing thereunder was properly included in the gross estate.

A power of appointment is general when it can be exercised in favor of any person the donee may select. It is special or limited when exercisable only in favor of persons or classes of persons designated in the instrument creating the power. *Kate Allerton Johnstone*, 29 B. T. A. 957, 963; affd., 76 Fed. (2d) 55; *Fidelity-Philadelphia Trust Co.* v. *McCaughn*, 34 Fed. (2d) 600; certiorari denied, 280 U. S. 602.

To the above definition of a general power we would add what was not pertinent in the cited cases and hence not adverted to but is material in the present case, namely, that the person selected by the donee must be a person in being capable of accepting a gift. The essential elements of a valid gift include (1) a donor competent to make it, and (2) a donee capable of taking it. 28 C. J. 626, ¶ 15. Since a donee must be a person in being capable of taking, it has been held that a gift can not be accepted by a parent for unborn children. 28 C. J. 627, ¶ 18. For these reasons no power of appointment, how-

[1] Revenue Act of 1926—

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

* * * * * * *

(f) To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will, or (2) by deed executed in contemplation of, or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth; * * *

ever general in terms, may lawfully be exercised in favor of the dead. 49 C. J. 1265. And see *Whitlock-Rose* v. *McCaughn* (C. C. A., 3d Cir.), 21 Fed. (2d) 164, wherein it is said that a general power of appointment by will enables the donee to devise the property to *any person who may have the capacity to take*, citing Underhill on the Law of Wills.

It would follow, therefore, in the instant case, that if Walter Smith died prior to the date of decedent's death and left no descendants surviving him the powers in controversy were general powers of appointment, since the donee in such event could have exercised them in favor of any living person she might have selected, who had the capacity to take. The powers could be said to be special or limited only in case Walter Smith was living at the time of decedent's death or left surviving him descendants then living. If Walter Smith were dead, obviously he would have been incapable of taking, and if he left no descendants, the restrictions upon the powers, otherwise general, given to decedent would have been inoperative and of no effect.

In *Leser* v. *Burnet* (C. C. A., 4th Cir.), 46 Fed. (2d) 756, a power of appointment, on its face general in terms, was held to be not a general but a special or limited power, because of the operation of state law. We perceive no sound reason why the converse should not be true, and a power limited in terms become a general power by removal or inoperation of the limitation prior to its exercise.

In support of their contention, petitioners cite and strongly rely upon the decision of the United States District Court for the Eastern District of Pennsylvania in *Fidelity Trust Co.* v. *McCaughn*, 1 Fed. (2d) 987, wherein the power of appointment could be exercised only during the time the donee remained unmarried. The donee remained unmarried and exercised the power. The court held that it was a special and not a general power for the reason that no husband or children of the donee could become beneficiaries thereunder. We can not agree with the conclusion there reached. A power, otherwise general, which prohibits the donee from exercising it in favor of non-existing persons only, notwithstanding such persons may but do not come into being prior to its exercise, is a general and not a special power. An event which does not happen can not serve to change a general into a special power. In *Johnstone* v. *Commissioner*, 76 Fed. (2d) 55, *supra*, the court said:

While it is true that the decedent could not have exercised the power if he had left issue surviving, this fact does not change a general power into a special power. * * * A contingency which would have prevented his exercise of the power did not happen, and decedent was entitled to exercise the general power of appointment given him in the several trust instruments.

In *J. Gilmore Fletcher, Executor*, 29 B. T. A. 503, 510, we discussed and declined to follow the *Fidelity Trust Co.* case, saying, "This decision appears to the Board to be out of line with the great weight of legal authority." And we may add that we have been unable to find where the reasoning applied in that case has been subsequently followed by any court.

Petitioners on brief also cite *Leser* v. *Burnet, supra*, but this decision, we think, does not aid them here. In that case a power, general in terms, was held to be a limited power by operation of the controlling state law. In its opinion the court said:

> In the light of these authorities, we would not be justified in holding otherwise than that, under the law of Maryland, language such as that used in Fulton's conveyance, which would ordinarily create a general power with right in the donee to appoint for the benefit of his own creditors, does not have such effect in Maryland, but creates a naked power from which neither the estate of the donee nor his creditors can possibly benefit. * * * A general power could doubtless be created in Maryland by expressing in the language creating it what is held to be implied in most other jurisdictions, viz., that the donee may exercise same for his own benefit or for the benefit of his creditors; but unless this is expressed, the power under the Maryland decisions is not general, but limited; and being limited, it does not come within the meaning of a general power of appointment as that term is used in the language of the Revenue Act.

The court further said:

> It thus appears that the purpose of Congress was to tax property in relation to which the donee of a power stands in a position not unlike that of owner, property over which he exercises the same authority as he does over that which he owns. This could be said of property which he could subject to the payment of his debts. It could not be said of a naked power which he could not exercise for his own benefit or for the benefit of his estate.

The rule is well settled that while we look to the Federal decisions, and in the absence of such decisions to the general law, in interpreting the acts of Congress, we look to the laws of the state as laid down by its courts to determine the effect of conveyances executed in such state and relating to property there situate. *Leser* v. *Burnet, supra; Tyler* v. *United States*, 281 U. S. 497, 501; *Warburton* v. *White*, 176 U. S. 484. In the case at bar, then, we are bound by the laws of Pennsylvania in determining the effect of the powers here in controversy, since all the documents involved were executed in that state and the appointed property was located there.

The rule adopted by the Maryland courts, above referred to, apparently does not prevail in Pennsylvania. *In re Forney's Estate*, 280 Pa. 459; 124 Atl. 424, dealt with a power which did not in terms authorize the donee to appoint in favor of creditors. There, as to a share of his estate, the donor created a testamentary trust with a life estate to his daughter, and directed that if the daughter died without

issue surviving, then her share should be paid to such person or persons as the daughter should "by any last will and testament, or instrument in the nature thereof, direct, limit and appoint." The daughter died without issue, and executed the power in favor of her sister. The court held that in so doing she made the property a part of her estate for all purposes, and that it was subject to the inheritance tax. And this power was specifically characterized as a "general power" in the later case of *In re Twitchell's Estate*, 284 Pa. 135; 130 Atl. 324.

Likewise, in the case of *Fidelity-Philadelphia Trust Co.* v. *McCaughn, supra*, arising in Pennsylvania, the power involved did not in terms vest the right in the donee to exercise it in favor of creditors. This point was considered by the court, but it was nevertheless held to be a general power of appointment and the appointed property subject to the Federal estate tax. See also *J. Gilmore Fletcher, Executor, supra*.

We conclude, therefore, that the powers here in question can not be held to be special or limited powers of appointment merely because by their terms they did not authorize donee to appoint in favor of creditors. These powers in effect were general powers and could be exercised by the donee in favor of any person capable of taking, whom she might have selected, unless Walter E. Smith was living at the date of her death or left descendants surviving at that time. Thus, the solution of the issue here depends upon a question of fact, namely, whether decedent's said brother predeceased her, without surviving issue.

Petitioners failed to stipulate or establish by proof the facts on this point, taking the position that the character of the powers as granted and not the facts as they existed at the time of exercise is controlling. In support of this view, petitioners call attention to the fact that in the *Leser* case, *supra*, the power was held to be limited because the donee could not appoint in favor of creditors, although it does not appear from the record that there were any creditors.

This argument, we think, is unsound. The premise does not support the conclusion for the reason that there is no analogy. In the *Leser* case, the power of appointment was limited whether or not there were creditors. If there were creditors, the donee under the power could not appoint to them, and so it was a restricted or special power. If there were no creditors, the power was still restricted, since the donee could not otherwise derive any personal benefit from the exercise of the power. The power by its terms could be exercised only by will, and so the donee could not appoint to himself. In any event, therefore, he could not exercise authority over the disposition of the appointed property as he could over that which he owned.

In the instant case, if Walter Smith died without issue prior to decedent's death, she, as donee of the power, could then have exercised the same authority over the testamentary disposition of the appointed property as she could over her own. In such event, the power was general and the property passing thereunder was properly includable in decedent's gross estate under section 302 (f), *supra.*

We do not know whether Walter Smith was living when decedent exercised the power, or whether there were descendants of Walter then living. Petitioners have failed to submit proof of the facts in respect to which the burden is upon them. Respondent's determination is presumed to be correct until the contrary is established by competent evidence. For lack of proof to show error respondent's determination must be, and is, approved.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

Leech and Mellott concur in the result.

Tyson dissents.