

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN

~~ATTORNEY GENERAL~~
ATTORNEY GENERAL

`AUSTIN 11. TEXAS

Hon. Marvin Hall, Commissioner
Board of Insurance Commissioners
Austin, Texas

Dear Sir:

Opinion No. O-2905
Re: Is the legislative intent to
preserve to the citizen his right
to select his own insurance agent
or carrier a declaration of public
policy as declared in Article 5062a,
Sec. 5, Vernon's Civil Statutes,
and related questions.

The material paragraphs of your letter of November 16, requesting
an opinion of this department, read as follows:

"This Department has conflicting opinions on what
is commonly known in the insurance business as 'coercion
of premiums.' This so-called coercion usually arises
from the following circumstances:

"In negotiating a loan, the borrower who holds title
to the property, contracts in writing, prior to the time
the loan is made, that the insurance on the security of-
fered by him for the loan shall be written in such com-
panies and in such agencies as the lender might select.
Usually, at the time the loan is closed, the borrower in
his deed of trust securing the note evidencing the debt,
covenants and agrees with the Trustee and the beneficiary
in the deed of trust that as long as the note is unpaid
he will keep the building and improvements constantly
insured against loss from any cause in such sums of insur-
ance and written in such companies and by and through such
agencies as the lender might select.

"The borrower, in addition to his regular payments on
the principal of the note and the interest thereon, usually
makes regular payments to the lender to create a reserve
from which the lender will pay the hazard insurance premi-
ums when due.

"The question has been raised as to whether such pro-
visions are contrary to provisions in the insurance laws,

and we respectfully request your advice on the following questions:

"1. Is the legislative intent (declared in Art. 5062a, Sec. 5) to preserve to the citizen his right to select his own insurance agent or carrier a declaration of public policy?

". If such Section is a declaration of public policy, is a contract executed prior to the consummation of the loan and provisions in a deed of trust securing the loan in violation of such public policy if the provisions of such contract and deed of trust require the borrower to put the placing of insurance exclusively in the hands of the lender?

"3. Do provisions in a deed of trust or mortgage requiring the borrower to pay premiums on the insurance on mortgaged property and to surrender to the lender all right of the borrower to select his insurance agent or carrier violate the declared policy of Article 5062a, Section 5, with respect to the right of citizens to select their insurance agents or carriers?

"4. In your opinion, is it contrary to the provisions of Art. 5062a, Sec. 5, for the lender or his representative to coerce the borrower, with or without consideration therefor, to place the insurance on such mortgaged property against the wishes of the borrower, provided the insurance submitted by borrower be in a company admitted to do business in Texas and which is generally recognized and known to be a sound, substantial company?

"5. If it is your opinion that the acts mentioned in the preceding questions are illegal, is there any means by which the Board of Insurance Commissioners can give the complaining assured relief; first, as to the loan company and, secondly, as to the insurance agent through whom the loan company is placing the insurance."

We have carefully considered along with your request, copies of the former opinions, one written by former Assistant Attorney General Vernon Coe, dated September 9, 1937, the other by former Assistant Attorney General Sidney Benbow, dated November 19, 1931, together with other correspondence and letters in the file accompanying your letter.

The particular section of the statute, Article 5062a, Vernon's Civil Statutes, with which we are chiefly concerned, is as follows:

"Sec. 5. No license shall be granted to any person or firm, either as local Recording Agent or Solicitor, for the purpose of writing any form of insurance, unless such person or firm is writing or soliciting, or intends to write or solicit insurance from the public generally. Nothing herein contained shall prohibit his insuring his own property or properties in which he has an interest; but it is the intent of this Section to preserve to each citizen the right to choose his own Agent or Insurance Carrier, and to prohibit the licensing of an individual or firm to engage in the insurance business principally to handle business which he controls only through owner-ship, mortgage, or sale. The term 'principally' as herein used shall mean seventy-five per cent (75%)."

In Bouvier's Law Dictionary, Vol. 3, page 2765, will be found the following definition:

"Public policy is manifested by public acts, legisla-tive and judicial, and not by private opinion, however eminent; . . . It is said to be determined from legisla-tive declarations, or, in their absence, from judicial decisions; . . ."

When we consider the question of "public policy" relating to contracts between individuals, and it cannot be questioned but that agency springs from contracts or by virtue of statute, we invariably run into that important requirement of policy "that men of full age and competent under-standing shall have the utmost liberty in contracting and that their con-tracts, when entered into freely and voluntarily shall be sacred and shall be enforced by courts of justice" unless contravention of public rights or welfare very clearly appears. Mo. K. & T. Ry. Co. v. Carter, 95 Tex. 461, 68 S.W. 159; Baltimore and O.S.W. Ry. v. Voight, 176 U. S. 498, 20 Sup. Ct. 385, 44 L. Ed. 560.

In regard to your first question, Section 5 of the statute as quoted recognizes the right of a person to insure or solicit insurance upon his own property or properties in which he has an interest. In this, no agency is involved, yet the last portion of the statute strongly suggests that the Legislature recognized certain evils existing, tending to destroy the free and unhampered pursuit of the business of conducting an insurance agency, licensed by the State. One such practice was the obtaining of an agent's license from the State by a person or firm under the control of or in the employment of another firm or corporation engaging in the business of handling insurable real estate through mortgage loans or through sale as a joint owner or agent, and by exercising such ownership or control over the agency, controls the placing of insurance to the exclusion of the real owner or one holding an interest in same, thereby defeating a valuable right in the individual citizen to place his insurance through such agency as he chooses, in such company as he selects. By this language as expressed in

the statute, the Legislature declared a policy intended to negative such acts as would prevent or lessen competition in the insurance business. (See Article 7426, Vernon's Civil Statutes)  Taking one situation by way of illustration, should the facts disclose a licensed agency operated by individuals identical with the ownership of such real estate or loan business, or controlled by it or in its employ, whose business comprises 75% or more of the insurance business written through such agency, a violation of this declared policy would be presumed as to such agency or agent.

Another evil was the soliciting of insurance business by those without any bona fide intentions to engage in the insurance agency business, but who obtained a license solely on account of their control over vast properties as owner or agent, thereby placing themselves or their principal in a position to demand and receive a commission as an insurance agent by turning over to such companies or resident agents said properties for insuring, resulting in obtaining insurance at a lower rate than otherwise obtainable. It is our view that the Legislature was principally striking at the above and similar all too frequently indulged in practices by prohibiting one from obtaining a license as a recording agent or solicitor where seventy-five percent (75%) or more of the insurance business he intends to write covers property which he controls only through ownership, mortgage or sale. As our subject concerns loan companies, this may be illustrated by an agent of a loan company who also obtains a license to solicit or write insurance. Should it be determined that he is principally, to the extent of 75% or more, engaged in soliciting or writing insurance covering property in which his principal, the loan company, has an insurable interest, then he has violated this statute and subjected his license to be revoked.

When we apply the test as to when one is an insurance agent, by ascertaining the interest he represents, recognizing his duties are owed first and foremost to his principal, the insurer, we see in Section 5 a legislative declaration that one licensed, who represents himself or interests under his control through ownership, mortgage or sale, to the extent of 75% as against the 25% or less of business solicited from the general public, is not to be deemed a bona fide agent of any company nor is he entitled to be licensed by the State or continue as a licensed agent. This, as we view it, is the declaration of policy with respect to an insurance agent's relationship to the interests which he serves and to which Section 5, Article 5062a extends.

Relative to your second and third questions, as above stated, we fail to discover any violation of Article 5062a, Section 5, in the mere fact that a borrower grants or delegates by contract with the lender, that the lender may select the agency or insurance company in which the insurance on the security for the loan may be placed and that such lender will be the medium through which the premium to be paid by the borrower is paid to the insurance company or its agent. The insertion of such

provision in the deed of trust is merely consummating such contractual relations in carrying out the terms of the prior executory contract. Consequently, we are unable to consider any "coercion of premiums" arising from contracts between the parties as affected by the above quoted provision of the statute. As to those questions contained in the Coe opinion dated September 9, 1937, identical with those herein propounded, such former opinion, insofar as it conflicts with our answers herein, is expressly overruled.

In accordance with the foregoing and in answer to your first question, it is the opinion of this department that Article 5062a, Section 5, Vernon's Civil Statutes, expressly declares a public policy to preserve to each citizen the right to choose his own agent or insurance carrier. Such declaration or policy does not extend to prohibit the entering into contractual relations by parties serving their own interests, but does extend to prohibiting a person or firm from holding a license from the State as local recording agent or solicitor where the facts disclose he is engaged in representing his own interests by handling business which he controls through ownership, mortgage or sale to the extent of 75% or more by volume to the exclusion of the public generally.

Having answered your first question in the manner set out above, we find it necessary to answer questions numbered 2, 3, 4, and 5 in the negative.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

/s/ Wm. J. R. King

Wm. J. R. King
Assistant

APPROVED DEC. 20, 1940
/s/ GROVER SELLERS
FIRST ASSISTANT
ATTORNEY GENERAL

WJRK:AMM:egw

APPROVED
Opinion Committee
By BWB
Chairman